MURPHEY, Appellant, vs. WEIL, Respondent.
MURPHEY, Respondent, vs. WEIL, Appellant.
MURPHEY, Appellant, vs. WEIL, Respondent.

*November 21 — December 11, 1894.*

(1) *Contracts: Construction: Patent "disallowed in substance."* (2) *Special verdict: Inconsistency with undisputed fact: New trial.*

1. A patent which, though once formally allowed, was never issued because of its interference with another patent, was "disallowed in substance," within the meaning of a contract for the sale of stock in a corporation which was the owner of said first-mentioned patent.

2. A fact established by the undisputed evidence may be treated, for purposes of review, as equivalent to a finding thereof formally incorporated into the special verdict; and an order granting a new trial on the ground that the findings of the special verdict are inconsistent with each other will be sustained if, as to a material matter, the findings are inconsistent with such an undisputed fact.

APPEALS from orders of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Affirmed.*

The action is upon a contract in writing for the sale of 250 shares of paid-up corporate stock in the Jacobs Electric Company, a corporation, by the plaintiff and one Jacobs jointly to the defendant, *Weil*, for the sum of $25,000, of which $13,500 was to be paid at the date of the contract, and the remaining $11,500 was to be paid in several deferred payments. The contract provides that, if the patents applied for by Jacobs on an invention for thermostat and automatic machine be disallowed in substance, the parties of the first part agree to refund to said *Weil* $12,500 of the money paid. The full number of shares of such stock were delivered to the defendant, who has not fully paid for the same. The plaintiff now owns the interest of Jacobs in the contract. The action is to recover the unpaid balance of the purchase money.

The defense, so far as involved in the question decided, is (1) that the contract was void by reason of false and fraudulent representations by which the plaintiff induced the defendant to enter into the contract; (2) that the consideration for defendant's promise has entirely failed, by reason of the fact that the patents are worthless; (3) that the patents applied for by Jacobs, for thermostat and automatic machines, were disallowed in substance, so that by the terms of the contract plaintiff's action for the balance of the purchase money for the stock is defeated.

At the date of the contract, Jacobs had several applications pending for thermostat and automatic machines, but none of them, so far as then known, had been allowed. Several were afterwards allowed. Jacobs had also an application pending for a patent for an automatic adjustment of the thermostat, at predetermined times, by means of a clock-work device. This application was allowed, but came into interference with a patent for a similar device to one Butz, and the patent was not issued. By contract with Jacobs, the Jacobs Electric Company was the owner of all patents issued to him for thermostat and automatic machines and improvements thereon.

There was a special verdict as follows: "(1) Did the plaintiff, at or about the time alleged, represent to the defendant that the devices in question were valuable and useful? A. Yes. (2) Did the plaintiff, at or about the time alleged, represent to the defendant, substantially, that the inventions and devices in question were as good as those of the Johnson Electric Service Company, and that experiments had been completed, and said devices had gotten beyond the experimental stage, and had been found practicable and useful, and that patents would surely issue thereon? A. Yes. (3) Was the plaintiff guilty of any false or fraudulent representations in the sale of the stock to the defendant? A. No. (4) If you answer the first, second, and third

questions in the affirmative, did the defendant enter into the contract in question relying upon such representations? *A*. Yes. (5) Did the plaintiff, in the sale of the stock to the defendant, substantially comply with the terms of the written agreement? *A*. Yes. (6) What sum of money has the defendant paid out prior to December 1, 1887? *A*. (by direction of the court). $5,250 to the corporation, and $1,000 to Jacobs on the contract. (7) Was such money so paid out by the defendant at the request and with the consent of H. E. Jacobs, as and for payment upon the written contract in question? *A*. (by direction of the court, with consent of parties). Yes. (8) Did the defendant, at the request of the plaintiff, pay out any sums of money on account of the business of the Jacobs Electric Company? *A*. No. (9) If you answer the eighth question in the affirmative, then what amount was so paid out? *A*. No answer. (10) If the court should be of the opinion that the plaintiff is entitled to recover, what sum is due him upon the contract in question? *A*. $9,120. (11) Were the terms, 'Patent applied for on thermostat and automatic machine,' in the contract in question, used with reference to the automatic machine involved in the Butz interference proceedings? *A*. (by direction of the court). Yes. (12) Were all the patents applied for and on which applications were pending at the date of the contract in question, for thermostat and automatic machines, allowed in substance? *A*. (by direction of the court). Yes."

Both parties moved for judgment on the special verdict. Both motions were denied, and both parties appealed. The defendant then moved to set aside the special verdict and for a new trial, which was granted, as expressed in the order, "upon the ground that the findings of said special verdict are inconsistent with each other." The plaintiff appealed from this order.

For the plaintiff there was a brief signed by *N. S. Murphey pro se, Chas. W. Felker*, attorney, and *H. J. Killilea*, of

counsel, and a separate brief and oral argument by *Mr. Murphey* and *Mr. Killilea.*

For the defendant there was a brief signed by *Turner & Timlin,* attorneys, and *J. G. Flanders,* of counsel, and a separate brief and oral argument by *Mr. Flanders* and *Mr. W. H. Timlin.*

NEWMAN, J.  The eleventh finding of the special verdict is that the terms, " Patent applied for on thermostat and automatic machine," in the contract, were used with reference to the automatic machine involved in the Butz interference proceedings.  This was the clock-work device for automatic adjustment of the thermostat and automatic machine at predetermined times.  So far as the question being now considered goes, the plaintiff's right to recover depends on the further fact that that application was allowed in substance.  If it was, the condition on which the right of the defendant to have his purchase money returned depends has not arisen.  If it has been allowed the plaintiff is, other conditions not preventing, entitled to recover the balance of the purchase money.  If this application has not been allowed in substance, the defendant is entitled to have the purchase money, to the amount of $12,500, returned.  The balance of purchase money unpaid is less than that sum. The law will not require the defendant to pay money which, if he had paid, he would be entitled to have returned.  The twelfth finding is that all the patents applied for, and on which applications were pending at the date of the contract, for thermostat and automatic machines, were allowed.  If both findings are true and consistent with the other findings of the verdict, then, clearly, the plaintiff is entitled to recover, for then all conditions prerequisite are fulfilled. Then the particular patent applied for, on whose disallowance in substance the right of the defendant to the return of the money depended, is included among the patents which

have been allowed. And it is clear that between these two findings is no repugnance. As a logical consequence, the plaintiff's right to recover follows from those two findings. But it is undisputed in the case that the patent applied for, which was involved in the Butz interference proceedings, although once formally allowed, was never issued by the patent office, because of its interference with the Butz patent. Although allowed in form, it was " disallowed in substance." So the twelfth finding is clearly inconsistent with the undisputed fact relating to the allowance of this particular patent. If this undisputed fact is, in legal contemplation, a part of the special verdict, then it will be true that the findings of the special verdict are inconsistent with each other. Then the order setting the verdict aside and for a new trial is right, on the very ground on which the trial court rested it.

A special verdict must find all the facts essential to a recovery, and nothing can be supplied by way of intendment. This is the rule. 2 Thomp. Trials, § 2651, and cases cited in notes; *Everit v. Walworth Co. Bank*, 13 Wis. 419; *Cotzhausen v. Simon*, 47 Wis. 103. The rule is satisfied if all the facts essential to a recovery, which are controverted by evidence upon the trial, are specially found in the verdict. So the formal verdict may be sufficient, although it does not find specially facts which, although put in issue by the pleadings, are yet not controverted on the trial, or are established by the undisputed evidence. *Stringham v. Cook*, 75 Wis. 589, 594; *Montreal R. L. Co. v. Mihills*, 80 Wis. 540, 551; *Hart v. West Side R. Co.* 86 Wis. 483, 489. No doubt the trial court, in passing on the sufficiency of the special verdict, must treat material facts so established by the undisputed evidence in the same manner and to the same effect as if they were formally incorporated into the verdict. Or it may formally incorporate them into the verdict by amendment. 2 Thomp. Trials, § 2656. The difference is of form

merely.  In either case, facts so established by the undis-
puted evidence go to support or defeat the verdict or the
judgment founded on it, whether they are formally incorpo-
rated into the verdict or not.  For such purpose they are, in
effect, a part of the verdict, whether formally incorporated
in it or not.  For every purpose of review they are equiva-
lent to a special finding of the fact so undisputed in the case.
This was, no doubt, the thought of the trial judge.  The
twelfth finding is inconsistent with this undisputed fact in
the case.  The finding is true, except as to this one applica-
tion.  As to that it is inconsistent with the fact established
by the undisputed evidence.  The repugnance is very ma-
terial.  It relates to the very matter upon which the case
turns, as determined by this special verdict.

Since the special verdict was so defective as that it should
be set aside, it could not well be error to refuse judgment
upon it to either party.

*By the Court.*— The three orders of the superior court
of Milwaukee county, appealed from, are each affirmed.