WALBRIDGE, Respondent, vs. BERLIN PUBLIC SERVICE COM-
PANY, Appellant.

*October 9—October 29, 1912.*

*Public utilities: Rules: Approval by Railroad Commission: Discon-*
*tinuing service: Injunction: Jurisdiction of circuit court.*

[1. Whether, in view of secs. 1797*m*—64 to 1797*m*—66 of the public
utilities law (ch. 499, Laws of 1907), a circuit court other than
that for Dane county had jurisdiction to entertain an action
by a private individual to restrain a public utility from discon-
tinuing its service to the plaintiff because of his refusal to
comply with rules filed by the utility with the Railroad Commis-
sion,—no formal order approving such rules having been made
by the commission or being expressly provided for in the law,
and there being no express provision requiring the commission
to investigate into the reasonableness of such rules upon the
complaint of a single citizen,—not determined.]

2. A rule of a public utility company supplying hot water for heat-
ing purposes, providing for installation of thermostats by the
company at cost, being on its face reasonable, and there being
no showing that the cost would be great or that the time neces-
sary for installation would be so long as to materially inter-
fere with the comfort or health of the occupants of plaintiff's
house and no contract existing by which the company was bound
to furnish heat to plaintiff for any fixed time, there was no
ground for interference by a court of equity to restrain the com-
pany from discontinuing its service because of plaintiff's refusal
to comply with said rule and permit the company to install a
thermostat.

APPEAL from an order of the circuit court for Green Lake
county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

This is an appeal from an order denying a motion to vacate
a preliminary injunctional order. The injunctional order
was obtained from a court commissioner at the commencement
of the action, February 12, 1912, upon the complaint alone,
and enjoined the defendant (a public utility corporation sup-
plying hot water for heating purposes) from disconnecting
the pipes in the plaintiff's house in Berlin from the defend-
ant's mains, and from discontinuing its service of hot water
to the house during the pendency of the action.

. The complaint alleged that plaintiff's house had been heated by hot water furnished by defendant through its mains since September 1, 1905; that plaintiff contracted with defendant September 1, 1910, for heat for the season ending May 15, 1911, for the sum of $107.20 to be paid in certain monthly instalments; that the heat was furnished and the instalments regularly paid for that season, and that in September, 1911, the contract was renewed for another season; that the heat was furnished by the defendant under the renewed contract and the instalments paid up to and including the instalment due February 1, 1912; that defendant in January, 1912, pretended to adopt and establish certain rates and rules, and on February 5, 1912, served a copy of the rules on the plaintiff with a notice that unless he complied with rules 5, 6, and 14 by February 10th the service of heat would be discontinued. The rules so referred to are as follows:

"5. *Discontinuance of service.* The company reserves the right, upon five days' notice, to cut off its service for nonpayment of bills, for failure to comply with its rules and regulations, or to guard against fraud or loss. In case the service has to be discontinued under this clause, a charge will be made for turning on the water of an amount equal to the actual cost of shutting off and turning on the water.

"6. *Equipment paid by consumer.* All service mains, radiators, thermostats, valves, piping and fitting are to be paid for and maintained by the consumer.

"14. *Thermostats.* The company reserves the right to furnish and install all thermostats connected to its heating system at or as near cost to the consumer as they can be installed, and to adjust and maintain the same at all times, other than breakage by the consumer or worn out parts, which supplies and repairs shall be made by the company at cost to the consumer."

The complaint further charged that the pipes and valves in the plaintiff's house, including the thermostat therein, were in the same condition at the time the notice was served as in previous years; that his aged mother-in-law, suffering from

severe illness, lived with him; that his house could not be properly heated in any other way than by the hot water from the main; that in case of discontinuance of service the necessary changes could not be made except with long delay, and that he would suffer irreparable injury thereby during the cold winter months.

By the answer it was alleged that the rules aforesaid were adopted and filed with the Railroad Commission in December, 1911, and have been effective since January 1, 1912, and that no action had ever been brought to change the same as provided by ch. 499 of the Laws of 1907 (secs. 1797$m$—1 to 1797$m$—108, Stats.); that the plaintiff refused and still refuses to allow the defendant to install a proper thermostat in his home, and that the notice of discontinuance was given for that reason.

The motion to vacate the injunction was based upon the answer and certain affidavits, as well as upon the examination of the plaintiff taken under sec. 4096, Stats. It appeared by the plaintiff's own testimony taken upon this examination that there was "no agreement between the company and myself in September, 1911," and none since that time; that there were several conversations in October and November, 1911, in which the parties wrangled over the question of whether plaintiff should put in a thermostat, and the final result was that it was understood the company would go on and furnish heat and the plaintiff would put in a thermostat if the Railroad Commission said he had to do so; that the plaintiff had in his house a contrivance which he considered was a sufficient thermostat, namely, a very sensitive thermometer, hung in the warmest room in the house, which rings a bell when 74 degrees is reached, which bell continues to ring until some person goes to the common room of the house and turns a wheel valve handle controlling the shut-off valve in the basement; that heat was furnished by the defendant, and that the plaintiff paid the monthly instalments up to and including the in-

stalment of February 1st, when the notice of discontinuance was served. It also appeared by the affidavits of experts that the apparatus called a thermostat by the plaintiff was not a thermostat in fact, because it did not automatically control the heat; that the rules aforesaid were filed with the Railroad Commission and became effective January 12, 1912, but that no formal order had been made by the commission approving the rules before the commencement of the action. Upon this showing the circuit court declined to vacate the temporary injunction, and the defendant appeals.

For the appellant there was a brief by *John J. Wood, Jr.,* and *McCabe & Dahlman,* and oral argument by *Mr. Wood.*

*Perry Niskern,* for the respondent.

Winslow, C. J. The principal contention of the appellant is that under the public utilities law (ch. 499, Laws of 1907, and the subsequent amendments thereto), by which all public utilities are placed under the control of the Railroad Commission, the trial court had no jurisdiction to make the temporary injunctional order in question or entertain this action, because by that law the circuit court for Dane county alone can entertain such action, and it must be brought against the Railroad Commission itself.

The law provides for the filing with the commission of rates and rules by every public utility (secs. 1797m—27, 1797m—28). It also provides that certain specified corporate bodies and twenty-five individuals, firms, or corporations may make complaint to the commission against either the rates or rules, and that the commission shall thereupon make investigation as to the subject matter of the complaint (sec. 1797m—43). It also provides that a summary investigation as to the reasonableness of rates, adequacy of service, or any matter relating to the utility, may at any time be made by the commission of its own motion (sec. 1797m—49). Notice of hearing in either case is to be given, and at the conclusion the com-

mission is given power to substitute new rates or change the existing rules, or require proper service by order which must thereafter be obeyed by the utility (secs. 1797$m$—46, 1797$m$—60, 1797$m$—61).

The law then provides that the public utility itself or any person or corporation in interest dissatisfied with "any order of the commission fixing any rate or rates, tolls, charges, schedules, joint rate or rates or any order fixing regulations, practices, act or service" may sue the commission in the circuit court for Dane county to vacate the order within ninety days after the rendition of the order, and that all right of action or recourse to the courts shall cease absolutely at the end of the ninety-day period; further, that no injunction staying such order shall issue except on application to the circuit court or presiding judge thereof upon notice to the commission (secs. 1797$m$—64, 1797$m$—65, 1797$m$—66).

The law does not in express terms provide that any formal order shall be made by the commission approving the schedules of rates or the rules filed by the public utility upon the filing of the same; nor does it provide in express terms that the commission shall be required to investigate into the reasonableness of the rates or rules adopted by any utility and filed upon the complaint of a single citizen; hence the plaintiff in the present case argues that the circuit court for Green Lake county had not been deprived of jurisdiction, because no order had yet been made which could be reviewed in an action brought against the commission under the provisions of the law in the circuit court for Dane county.

The question is not free from difficulty, and we express no opinion upon it either way because we find it entirely possible to decide this appeal upon other grounds. We have stated the contention here for the reason that it would seem that it is a matter which may well be brought to the attention of the legislative branch of the government, to the end that by proper amendment of the law the doubt may be cleared up.

Upon the merits of the case we think the temporary injunctional order should have been vacated.

On the face of it the rule requiring the installation of a thermostat seems entirely reasonable. A thermostat means an automatic regulator of heat (*Murphey v. Weil,* 92 Wis. 467, 66 N. W. 532), and this the plaintiff did not have. By his own affirmative testimony it appears that he had no entire contract with the defendant company to furnish heat for the season, but simply an arrangement that the defendant would go on and furnish heat for a time not fixed, and that the Railroad Commission was to be appealed to to decide whether a thermostat should be put in. The cost of putting in a thermostat nowhere appears, nor the time required to install it. There can be no presumption, in the face of common knowledge on the subject, that the cost would be great or the time necessary for installation would be so long as to materially interfere with either the comfort or the health of the occupants of the plaintiff's house. When it appeared by the plaintiff's admission that he had no season contract with the defendant, there remained no ground upon which a court of equity could be called upon to interfere, and the preliminary injunctional order should have been at once vacated.

*By the Court.*—Order reversed, and action remanded with directions to vacate the preliminary injunctional order.