R. McCLOSKEY ET AL. v. J. POWELL ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF FOREST COUNTY.

Argued October 1, 1888—Decided January 7, 1889.

One who sells the right to cut timber trees upon land claimed by him but which in fact belongs to another, and points out the lines, puts his vendee in possession, and receives the consideration therefor, is liable under the act of March 29, 1824, 8 Sm. L. 283, with his licensee, in treble damages for all timber cut and removed by the latter without the consent of the owner.

Before GORDON, C. J., PAXSON, STERRETT, CLARK, WILLIAMS and HAND, JJ.; GREEN, J., absent.

No. 206 October Term 1887, Sup. Ct.; court below, No. 1 December Term 1883, C. P.

On September 24, 1883, a summons in trespass q. c. f. was issued in an action by Robert McCloskey and A. B. Reid against J. H. Ryder, James N. Scatcherd, John N. Scatcherd and Jerome Powell, to recover for the cutting of timber trees, under the act of March 29, 1824, 8 Sm. L. 283. James N. and John N. Scatcherd were not served; Ryder and Powell pleaded, not guilty.

At the trial on December 23, 1886, the facts were in substance as follows:

Statement of Facts.

In 1880, Ryder, as the agent of James N. and John N. Scatcherd, doing business at Buffalo, N. Y., as Scatcherd & Son, negotiated with Powell, who resided at Ridgway, for the purchase of a quantity of cherry and other hard-wood timber supposed to be upon land owned by Powell. Powell owned two adjoining tracts, warrant numbers 2517 and 2545, as illustrated upon the sketch,

and proposed to have a survey made to ascertain whether the timber wanted was within his lines. In August, 1881, he took a surveyor named Dickson, and a corps of helpers including one Frampton, who had been over the land with Ryder when examining the timber, and proceeded to make the survey. They began at the southeast corner of 2545, and ran west on the south line of that warrant. At about 480 rods, by their measurement, they came upon an old marked corner, with a line running north and south therefrom. The official length of this south line of 2545 was 477 rods. The corner reached was discussed, but the mark was not blocked to ascertain its age. They then ran 131 rods farther west, and reached a post and witness trees marked. The marks seemed to be as if made of a recent date, and, their line being too long for the official distance, Frampton suggested that they go south upon the district line and verify it by running north, but Powell

declined to do so as it would consume time. Without blocking the marks they then turned north from the corner last mentioned (which was in fact a corner for a line made in 1863 as a subdivision of 3157 south of it) and ran 323 rods north, when they struck another corner corresponding with the one they had left, and, again without blocking, they turned east and ran 129 rods when they reached another old corner, which, however, they did not block for examination. Powell went home, and the surveyor made a plot of the survey.

On October 22, 1881, after reporting the result of the survey to Ryder, as embracing the timber negotiated for, Powell entered into a written contract with Scatcherd & Son by which he sold to them the cherry and other hard-wood timber upon the two parcels known as warrant 2545, "containing 1154 acres" (the official quantity being 900 acres and allowance), and warrant 2517, "containing 1009 acres more or less," the agreed prices per thousand to be paid according to an estimate on the stump to be made by Ryder for Scatcherd & Son and by Frampton for Powell. Soon afterward, Frampton and Ryder made the estimate, marking the trees to be cut up to the line of the new survey. Ryder then put up a mill on 2545, and in 1882–83 cut and removed all the hard-wood timber within the lines surrounding the parcel marked, Locus in quo, amounting to 350,000 feet, for which payments were made to Powell as they became due. The plaintiff showed title to 3158, embracing the locus in quo, and rested.

The foregoing case of the plaintiffs was not materially affected by the testimony of the defendants.

The court, BROWN, P. J., charged the jury and answered the points presented as follows:

The plaintiffs' tract is in Forest county. Jerome Powell, one of the defendants, was the owner of a tract of land east of the plaintiffs' tract. The number of Powell's tract was 2545. Powell also, it appears, owned another tract lying east of that again,—the first mentioned tract of Powell being east and adjoining the tract of the plaintiffs. Powell's tracts are in Elk county, the county line being the boundary line between his tract and the plaintiffs'.

By the contract dated October 22, 1881, Powell agreed to

Charge of Court below.

sell to Scatcherd & Son all the merchantable cherry, ash, poplar and cucumber timber then standing, lying or being on his two tracts of land. After the making of this contract, Ryder, one of the defendants, took charge of the cutting of the timber for Scatcherd & Son. The plaintiffs have given evidence of the location of the division line between their tract and the Powell tract, 2545; and inasmuch as the defendants have given very little, if any, evidence on which the jury ought to pass, contradicting or challenging the correctness of the location of the line, as testified to by plaintiffs' witnesses, you will probably have no difficulty in concluding that the true line is where the plaintiffs claim it to be.

The plaintiffs have introduced testimony showing that the defendant, Ryder, or persons acting under him or under his directions, cut a quantity of cherry, ash, poplar and cucumber timber upon that portion of the plaintiffs' tract which lies east of the line parallel to the division line between the plaintiffs' and the defendant's tract; that is to say, upon the strip that is the subject matter of this suit, being a distance of something like 130 rods west of the true division line. To this extent the testimony of the plaintiffs is not particularly disputed; and you will probably have no difficulty in coming to the conclusion that Ryder and those acting under him, did cut cherry, ash, poplar and cucumber timber west of that line. And you will probably have no difficulty in coming to the conclusion that the plaintiffs are entitled to a verdict; but whether against one or both the defendants, will depend upon considerations to which I will presently call your attention.

\* \* \* \* \* \* \* \*

Having instructed you as to the principles and rules by which the damages are to be assessed, we now reach a question of law upon which I have had no little difficulty in arriving at a conclusion satisfactory to myself; but, whether we are correct or not in our ruling, you will take it as the law of the case. The question referred to is raised and will be disposed of in answer to the defendants' first point, wherein the court is requested to instruct you that, upon all the evidence in this case, the plaintiffs are not entitled to a recovery against the defendant, Jerome Powell.

This is an action of trespass based upon an act of assembly

highly penal in its character, and must not be construed to extend to cases not clearly within its provisions. As to the liability of Ryder no question exists, because, according to his own testimony, he cut and employed others to cut and take away the timber. But is Powell liable? The question is not whether Powell is or is not liable to account in some form of action. We may assume it to be the law that he undoubtedly is so liable. But is he liable together with Ryder in a joint action of trespass for cutting and taking the timber in suit?

To entitle the plaintiff to a verdict against two defendants as joint trespassers, it must appear that they acted in concert in committing the trespass for which the action is brought. The trespass for which this action is brought is the cutting and taking timber from the plaintiffs' land, and we feel compelled to say to you that [there is no evidence in the case from which you can, with propriety, find that Powell acted in concert with Ryder in committing the trespass for which this action is brought.] [5] Hence we answer the defendants' first point in the affirmative, and this leaves you to bring in a verdict against Mr. Ryder alone, and to assess the damages in the mode which I have stated. It is gratifying to know that if I am in error in this, the Supreme Court will very readily correct it.

The plaintiffs request the court to charge:

1. If the jury believe from the evidence, that the defendant, Powell, procured the west line of his lands to be so run and marked as to include some two hundred and sixty acres of land belonging to plaintiffs, and caused the hard-wood timber on his said lands to be estimated up to said line, and caused said line, so run and marked, to be pointed out as his line, to J. H. Ryder, acting for Scatcherd & Son, to whom he, Powell, had sold said hard-wood timber, and that said purchasers accordingly, by reason of said acts of Powell, cut the timber up to said line, and paid him the stumpage for the timber so cut on plaintiffs' land, or any portion of it, he, Powell, would be liable to the plaintiffs as a co-trespasser with the party or parties who actually cut the timber.

Answer: This point is denied.[1]

2. That the defendant, Powell, would be liable to the plaintiffs for the trespass committed on their land, if the jury believe from the evidence that his acts in the running and marking of

the line, and the selling, estimating and pointing out the timber, if such acts were done by him or by his procurement, ordinarily and naturally induced the purchasers of the timber to commit the trespass referred to.

Answer: We think that this point confounds the distinction between injuries that are the consequence of an act, and injuries that are the direct result of force, and it is answered in the negative.[2]

3. Under the facts stated in the first and second points, the defendant Powell would be liable as therein stated, no matter whether he did or did not know at the time that the line so run and marked encroached on land that did not belong to him.

Answer: This point is denied.[3]

The defendants request the court to charge:

1. Upon all the evidence in this case, the plaintiffs are not entitled to recover against defendant Jerome Powell.

Answer: This point is affirmed.

2. If the defendant Powell had title to tract numbered 2545 and caused a survey to be made by a surveyor of good repute in his profession, with a view to ascertain its boundaries, and found lines and corners upon the ground which the surveyor pronounced to be the lines and corners of the said tract, and he was afterwards informed by another surveyor of good repute, acquainted with the line between his tract and plaintiffs' tract, that the lines so found were the true lines of his tract, and believing and in good faith relying upon the opinions so expressed by such surveyors, he sold the timber upon his said tracts to the defendants Scatcherd & Son and expressed to them or their agent his opinion that the lines were as they had been pointed out by such surveyors, and did nothing more to encourage or induce said Scatcherd & Son to cut said timber, and the defendants Scatcherd & Son, relying upon the accuracy of the said lines, purchased the timber within the same without knowledge or reason to believe that the said lines included part of plaintiffs' land, and in good faith believing that they had title and right to do so, cut the timber within the said lines, the plaintiffs are not entitled to recover at all against the defendant Jerome Powell, nor to recover against the other defendants, treble damages for the cutting and removal of any of the said timber which may be found to have been within the line of their tract.

*Arguments.*

Answer: We say that we have already said that there can be, in this suit, no recovery against Jerome Powell; but, with that exception, the point is refused.[4]

The jury returned a verdict against J. H. Ryder "for $4,350.61, single damages, composed of $4,130.06, for timber cut and carried away, and $220.55 for timber cut and left upon the ground." Judgment having been entered under the act of 1824, for the treble and double damages allowed, the plaintiffs took this writ, assigning as error:

1–3. The answers to the plaintiffs' points.[1 to 3]

4. The answer to the defendants' point.[4]

5. The part of the charge embraced in [ ][5]

*Mr. B. J. Reid* (with him *Mr. Rasselas Brown*), for the plaintiffs in error:

1. Where A sells the timber on his lot to B, who is a stranger in the county, ignorant of land titles and lines,—if A, by positive acts, such as making lines and pointing them out as his, estimating the timber, marking the trees to be cut, and receiving from B the stumpage therefor, induces B to cut and carry away the timber from plaintiffs' lot, shall B be guilty of the trespass, and A, whose acts and representations brought it about, not be guilty too? In principle and reason it would seem that the maxim, Qui facit per alium, facit per se, is applicable in just such a case as this, and the authorities to that effect are overwhelming: Dreyer v. Ming, 23 Mo. 434; Hamilton v. Hunt, 14 Ill. 472; Cram v. Thissell, 35 Me. 86; Scott v. Hunter, 46 Pa. 193; Bard v. Yohn, 26 Pa. 489; Dundas v. Muhlenberg, 35 Pa. 353; Flewster v. Royle, 1 Camp. 187; 1 Arch. N. P. 413; Guille v. Swan, 19 Johns. 381 (10 Amer. D. 234); Leame v. Bray, 3 East 593; Gibbons v. Pepper, 1 Ld. Raym. 38; Wall v. Osborn, 12 Wend. 39; McMurtrie v. Stewart, 21 Pa. 322; Davis v. Newkirk, 5 Den. 92; Herring v. Hoppock, 15 N. Y. 413; Johnson v. Tompkins, 1 Bald. 601; Ricker v. Freeman, 50 N. H. 420 (9 Amer. R. 267); Keiser v. Beemer, 3 Pa. S. C. Dig. 189; s. c. 12 Cent. R. 492.

2. Property may be wrongfully converted by two or more persons jointly, although the acts of one may have followed the acts of others at successive periods of time in producing

the results. The maxim, *Causa proxima non remota spectatur*, is not controlled by time and distance, but by the succession of events: Penn. R. Co. v. Kerr, 62 Pa. 366; Penn. R. Co. v. Hope, 80 Pa. 379. These railroad causes were actions on the case, but the maxim referred to, as explained in the books, is applicable alike to actions of trespass and case. The test of liability in both, so far as this maxim is concerned, is whether the acts of the party, sought to be charged, ordinarily and naturally induced the final act in the series which worked the actual mischief: Scott v. Hunter, 46 Pa. 193; Pittsburgh v. Grier, 22 Pa. 66. Nor is it necessary that the trespass, at the time it was done, should have been for the defendant's benefit: the question of interest becomes material, only where one assents to a trespass after it has been committed, without any previous act inducing it: 1 Arch. N. P. 424; 4 Inst. 371; Williams v. Sheldon, 10 Wend. 656. And intent is not material under the act of 1824: Watson v. Rynd, 76 Pa. 59; Kramer v. Goodlander, 98 Pa. 363; nor in any case of trespass: Brooks v. Olmstead, 17 Pa. 24; 1 Chit. Pl. 129*; 2 Greenl. Ev. § 622; Ricker v. Freeman, 50 N. H. 420 (9 Amer. R. 267).

*Mr. C. Heydrick*, for the defendant in error:

1. The action given by the statute is a new one, possessing some of the features of both trespass and trover, but differing very materially from both, and more nearly akin to case than to either, as when the owner has neither the possession nor the right of immediate actual possession, and the trees cut are not converted. A party entitled to temporary possession may support trover against the owner: Roberts v. Wyatt, 2 Taunt. 268. A lessor cannot support trespass for an injury to the inheritance, during a subsisting lease, but the action, if trespass, must be in the name of the tenant, the lessor's remedy being in case: Campbell v. Arnold, 1 Johns. 511; Tobey v. Webster, 3 Johns. 468. But under the act of 1824, the plaintiff must have the absolute property, and it is immaterial whether his right be in possession or in reversion: Tammany v. Whittaker, 4 W. 221. It is obvious, therefore, that in enacting the statute the legislature had not in view the incidents of the common law actions of trespass and trover, and adjudications

in those kinds of cases can afford no light in its application: Hughes v. Stevens, 36 Pa. 320; O'Reilly v. Shadle, 33 Pa. 489. Moreover, the remedy is not only statutory, it is highly penal, and is therefore to be construed strictly: Wheeler v. Carpenter, 107 Pa. 271.

2. Then did Powell "cut down or fell, or employ any person or persons to cut down or fell any timber tree or trees" of the plaintiffs? It is sought to connect him with the cutting by the paper called the contract of sale of the timber, yet that paper will be searched in vain for any provision creating the relation of employer and employee between Powell and Ryder, or Scatcherd & Son. And, regarding the act of Frampton, in assisting to point out and mark the timber to be cut, as the act of Powell, that act would not come within the language of the statute. Nor has the maxim, Qui facit per alium, facit per se, any application. The addition of the words, "or employ any person or persons to cut down and fell," limits the previous clause, "cut down and fell," to a personal cutting and felling, else why were these words added?

3. Nor would the common law action of trespass lie against Powell for the injuries complained of in this case. In nothing that he said or did, was there anything equivalent to a command, an employment, or a procurement. The force, of which the injury was the direct and immediate result, cannot, therefore, be imputed to him upon the maxim above quoted. Surely, there was no legal force involved in conveying standing timber, and pointing out the lines on which it stood. Men frequently convey land to which they have no title, as it afterwards turns out, yet no one ever heard of an action of trespass against a vendor for the subsequent acts of the vendee. But why should the case of a vendor be different from that of a mere licensor? Offerman v. Starr, 2 Pa. 394; Kile v. Giebner, 114 Pa. 381. The most that can be said in this case, is, that the injury, if any, was consequential, and if not too remote, Powell might be liable in another form of action, but not in trespass: Leame v. Bray, 3 East 593; Edelman v. Yeakel, 27 Pa. 26.

OPINION, MR. JUSTICE WILLIAMS:

The several assignments of error in this case raise but a single question. The facts upon which that question is presented are not in controversy.

It appears from the evidence that Scatcherd & Son, of Buffalo, N. Y., sent their agent, Ryder, into Elk county, to purchase cherry timber. In his search he went upon two warrants owned by Mr. Powell, of Ridgway, on which he had heard there was cherry timber. He found a growth of valuable cherry and other hard woods in the neighborhood of Mr. Powell's lands, but was unable to determine whether it was within Powell's lines or not. He accordingly went to see Powell, and told him if the grove he had seen was upon his land he would make a contract for the timber on warrants Nos. 2517 and 2545, but if that grove was not on the land he did not wish to do so. Powell promised to have his lines run and to let Ryder know the result. Not long after he went with a surveyor and the necessary helpers to the warrants in question, to locate the lines and the grove of cherry. The surveyor went to the southeast corner of 2545, a well-known corner, and ran west on the south line of the warrant in search of the southwest corner, and the west line of 2545. That line was known to be not only the west line of the warrant, but the west line of Millstone township, and of Elk county, and to be also an original district line. The surveyor missed the southwest corner and ran more than one hundred rods beyond it, and far beyond the official distance, to a comparatively new corner made in the subdivision of one of the adjoining warrants. This he treated as the southwest corner of 2545, and, turning north, ran and marked a new line as the western line of the warrant. This line included a large part of the grove of cherry timber to which Ryder had called attention. The true west line excluded the whole of it. The surveyor had his attention drawn to both the northwest and southwest corners of 2545, in the old district line, before he left the ground, but he nevertheless made a diagram showing his work, and a new line, as the west line of 2545, and gave it to Powell, but told him of the old corners in the district line, as he alleges. Powell, acting upon the idea that the diagram was correct, and without any further investigation of the lines and corners of 2545, advised Ryder that a survey had been made and the cherry found to be on his land.

A contract was accordingly made with him by Ryder, on behalf of his principals, for the hard wood on warrants Nos. 2517

and 2545. The timber was to be cut and taken away within three years, and to be paid for at the following rates : the cherry at $10 per thousand feet, the ash at $7, and the poplar and cucumber at $5 per thousand, board measure, the amount to be estimated on the stump. This estimate was to be made at once by Ryder on behalf of Scatcherd & Son, and by Frampton on behalf of Powell. The lines were to be pointed out by Frampton, who was with the surveyor when the new west line of 2545 was run and marked, a short time before, which inclosed the cherry timber. The line pointed out was the new line which inclosed two hundred and sixty acres west of the true line. Frampton and Ryder went to each tree thus appearing to be on 2545, marked and estimated it, and returned their estimate when completed to their principals. Ryder then went upon the ground for his principals and cut and removed the timber under the contract, and the stumpage was promptly paid to Powell as it fell due. The owners of warrant No. 3158, within which the timber was, brought this action to recover treble the value of the trees so cut and removed, and they joined Powell, the vendor, Scatcherd & Son, the vendees, and Ryder, the agent, as defendants in the action.

Powell denied his liability because he had not personally felled the trees or employed others so to do. The plaintiffs stated the ground on which they sought to recover in their first point, by which they asked the court to instruct the jury as follows : "If the jury believe from the evidence that Powell procured the west line of his lands to be so run and marked as to include some two hundred and sixty acres of land belonging to the plaintiffs, and caused the hard-wood timber on his said lands to be estimated up to said line and caused said line so run and marked to be pointed out as his line to J. H. Ryder, acting for Scatcherd & Son, to whom he (Powell) had sold said hard-wood timber, and that said purchasers by reason of said acts of Powell cut the timber up to said line and paid him the stumpage for the timber so cut on plaintiffs' land, or any portion of it, he (Powell) would be liable to the plaintiffs as a co-trespasser, with the party or parties who actually cut the timber." The court answered this point in the negative. From an examination of the general charge we understand the reason for this ruling to be that the action is brought under a

statute which is penal in its character, and must not therefore be extended to any case not clearly within its provisions. The correctness of the rule thus invoked by the court below is beyond question, but its applicability in this case is more than doubtful.

The act of 1824 gives treble the value of timber cut and converted, to be recovered against " any person who shall cut down or fell or employ any persons to cut down or fell any timber trees growing upon the land of another, without the consent of the owner thereof." The trees for which the plaintiffs seek to recover were cut down upon the land of another, and without the consent of the owner. The only question is, Who are the principals in the trespass? Ryder and his employees did the actual felling of the trees, but they had no interest in the timber; no control over it, and no power to convert it. They were employed by Scatcherd & Son, who were not personally upon the ground, but who directed the movements of their employees. But how came Scatcherd & Son upon the close of the plaintiffs? They, or their employees were put into the actual possession of the land and the timber by Powell, their vendor. He caused the line to be pointed out, and said in legal effect, " This land is mine, these timber trees are mine; I will sell them to you, and you shall cut and remove them and pay me ten dollars per thousand feet for the cherry as it now stands on the stump."

If Ryder had cut the timber as a jobber for Powell, no one would question Powell's liability as a principal. There would have been in that event a direct employment to fell the trees. But if, instead of hiring Ryder to cut the trees for him, he had sold them to Ryder, thus securing his interest in them in advance, and leaving Ryder the risk and responsibility of the conversion of the trees into lumber, and the lumber into money, he equally encourages and directs the cutting. The terms of the contract are changed, but the relations of the parties to each other and to the timber trees remain the same. Powell is in either case the owner under whose title Ryder enters, and Ryder in either case fells the trees under the authority of Powell. The circumstance that Powell made his sale to Scatcherd & Son, who employed Rider, does not in any manner change his position or his liability. When the trees were

pointed out, counted, estimated, and sold to Scatcherd & Son, to be cut and removed for an agreed price per thousand feet, the authority to cut down the trees was given in the most clear and explicit manner possible. It was the very purpose of the sale, and by the terms of the written contract they were bound to cut the trees and remove them within three years, or lose their title to them, after having paid the price fixed according to the estimate. They were bound absolutely to pay for the whole of the timber, at the quantity estimated and at the price fixed in the contract, and they were distinctly authorized to cut and remove it. If Mr. Powell had gone upon the land with Scatcherd & Son's agent and said in so many words, "These trees are mine, I sell them to you at ten dollars per thousand as they stand, and I authorize you to cut them down, manufacture, and remove them," such direction would· have been no clearer, nor would it have made his position as a principal in the trespass any more apparent than does the contract of sale.

It is not contended that Powell would not be liable, if this was the common law action of trespass quare clausum fregit; but it seems to be thought that the same acts which would make him a principal, if the action was in the common law form, will afford no basis for liability under the statute. This is a mistake. Powell would be a principal in the common law action, not because he cut the trees with his own hands, but because he caused and directed the cutting. Qui facit per alium facit per se. For the same reason he is a principal in the trespass when the action is under the statute. Whether the axe be used by himself, by his employee, his vendee, or one occupying no contract relation to him, is immaterial, for he cuts the trees who causes them to be cut: Welsh v. Cooper, 8 Pa. 217; Fox v. Northern Liberties, 3 W. & S. 103. In the latter case it was said that a municipal corporation could become a trespasser by previously authorizing or subsequently ratifying the trespass of its officer. It is an elementary rule that he who procures a trespass to be committed is liable with those who commit it, and it has been often recognized in our cases: McMurtrie v. Stewart, 21 Pa. 322; Welsh v. Cooper, supra; Frantz v. Lenhart, 56 Pa. 365; Deal v. Bogue, 20 Pa. 228.

There is no hardship involved in the application of the rule to this case, for in good conscience he should bear the consequences of an act who caused or procured it to be done. Ryder, and the laborers who actually felled the trees, had no interest in the matter beyond their wages, and they did what their employers directed and because they directed it. Their employers claimed no title to the land on which the trees were standing, but were put in possession by Powell, under a title which he asserted was in himself; and they directed the trees to be cut, because Powell had sold them as they stood for that very purpose, and as the legal and logical effect of such sale, had said, " These trees are mine ; I sell them to you, to cut down and remove, and you must do it within three years." The mistake was Powell's, and out of that mistake all the consequences have come. He sold what he did not own, and took pay for it. He put his vendees on the ground to cut the trees. By his contract he authorized and directed the work done under it, and he has no more reason in good conscience, than he has right at law, to object to being held for the consequences of his own acts. If he had not done the acts enumerated in the point, no trespass would have been committed and no action would have been brought. The point should have been affirmed.

The judgment is now reversed, and venire facias de novo awarded.

