Heinselman vs. Hunsicker.

HEINSELMAN, Plaintiff in error, vs. HUNSICKER, Defendant in error.

*April 6 — April 25, 1899.*

*Deeds: Inconsistency in description: Construction: Disputed boundary: Adverse possession: Estoppel: Mutual mistake.*

1. A conveyance of real estate will not be declared void for uncertainty in the description where it is possible, by any reasonable rule of construction, to determine what property it was intended to convey.

2. In construing a deed containing inconsistencies in the description of the land thereby conveyed, preference will be given to enumerated monuments over enumerated courses and distances, and to such courses and distances over the statement of the quantity of land conveyed.

3. In 1849 Swift, being the owner of a fractional quarter section, bounded on the west by a range line, conveyed the S. W. ¼ thereof to M., describing it as forty acres, and in 1877 M. conveyed it to plaintiff, describing it as forty acres more or less. Said subdivision actually contained 44.11 acres, and the N. W. ¼ of said fractional quarter section actually contained 44.25 acres, the excess of the township, under the rules of the United States land office in conformity to sec. 2395, R. S. of U. S., having been carried to the west tier of forties. In 1851 Swift conveyed the E. ½ to Smith, describing it as containing eighty-two acres, and in 1880 he executed a correction deed describing the land conveyed as the east eighty-two acres. In 1881 D., who claimed under Swift, executed a deed to defendant, describing the premises conveyed as commencing at the northwest corner of said quarter section; "thence running east along the quarter line eighty-six rods to the corner of lands owned by Smith; thence south parallel with the quarter line, 160 rods, to the center of the highway; thence west, along center of the highway, six rods; thence north, along the line of the land owned by [plaintiff], eighty rods; thence west, along the line of land owned by [plaintiff], eighty rods; thence north, along the center of the highway, eighty rods, to the place of beginning,— containing about forty-six acres, be the same more or less, according to the government survey. The land not to interfere with Smith's east eighty-two acres." The section was bounded on the south and west by a highway. *Held* that, construing the description with reference to the situation, that part calling for a north and south line "along the line of lands owned

Heinselman vs. Hunsicker.

by" plaintiff should be rejected as surplusage; and that so con-
strued the deed was sufficient to sustain a claim of adverse posses-
sion under sec. 4211, R. S. 1878.

4. In such a case it appeared that in 1882 there was a fence along the
west side of the disputed strip, with the exception of a gap of a few
rods; that the fence was afterwards completed and remained in
that condition until 1890, when plaintiff and defendant concluded
from measurements that the south end of it was eight feet too far
east; that defendant then moved the fence at the south end, west
about that distance, the removal extending north probably twenty
or twenty-five rods; and that the fence when so removed was sub-
stantially on the west line of the land in controversy. The evi-
dence was practically undisputed that defendant at all times had
occupied the disputed land on the east side of the fence, and had
made improvements thereon. *Held*, that plaintiff could recover,
if at all, only that portion of the disputed strip lying between the
fence as it was built in 1882 and as removed in 1890.

5. The mere building of a line fence, and the cultivation and improve-
ment of the land on one side of it by the adjoining owner, would
not constitute an estoppel, where the parties labored under a mut-
ual mistake.

ERROR to review a judgment of the circuit court for Outa-
gamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

Ejectment for a strip of land, 2.36 chains wide at the north
end and 2.5 chains at the south end, on the east side of the
S. W. ¼ of the S. W. ¼ of section 19, T. 21 N., R. 15 E., in
Outagamie county. The answer contains several defenses:
(1) General denial; (2) ten years' limitation, and possession
under written instruments; (3) twenty years' adverse posses-
sion; (4) facts supposed to constitute an estoppel. On the
trial, the court directed a verdict for the defendant in error
for the recovery of a strip of land eighteen feet 5.76 inches
wide at the north end and eight feet. wide at the south end,
a more particular description being given in the opinion. A
motion for a new trial was denied, and the defendant in the
court below brings the case to this court for review on writ
of error.

For the plaintiff in error the cause was submitted on the brief of *Cate, Sanborn, Lamoreux & Park.*

For the defendant in error there was a brief by *Bouck & Hilton,* and oral argument by *Gabe Bouck.*

BARDEEN, J.   We attempt the solution of the questions presented in this case with considerable vexation of spirit. The numerous mistakes in the printed case,— the failure to make an index to either case or record, and to note in the case, as the rule requires, the page of the record where the printed matter could be found; the rambling, desultory, and contradictory character of the testimony; and the failure of counsel to cause witnesses to so connect their testimony with the *locus in quo* as to make it intelligible when produced in print,— has greatly increased our labors, and rendered a satisfactory conclusion difficult.   The action is ejectment. The printed complaint calls for a strip of land 2.36 chains wide at one end, and twenty and one-half at the other.   The complaint in the record demands a strip 2.36 chains wide at the north end, and two and one-half chains at the other extremity.   The case makes the surveyor swear that this strip contains 44.06 acres,— a mistake, as shown by the record, of about forty acres.   These are instanced to show the unreliable character of the printed case.

On June 12, 1849, William Swift entered the S. W. ¼ of section 19, T. 21 N., R. 15 E.   This, it appears, was a fractional quarter section, containing, according to the government survey, 168.36 acres.   Under the rules of the government land office, under sec. 2395, R. S. of U. S. 1873–74, the fractional subdivisions are thrown to the west and north of the sections bordering on the township and range lines. Section 19 borders on the range line, and the government plat offered in evidence shows that the N. W. ¼ of the S. W. ¼ contains 44.25 acres, and the S. W. ¼ of the S. W. ¼ con-

tains 44.11 acres.  January 15, 1851, Swift conveyed the
E. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ to Michael Smith, and the deed described
it as containing eighty-two acres.   December 19, 1870, Swift
conveyed the  S. W. $\frac{1}{4}$ of the  S. W. $\frac{1}{4}$ to McClellan, and de-
scribed it as forty acres.   February 10, 1877, McClellan con-
veyed the  same  land to *Hunsicker*, defendant in error, de-
scribing it as forty acres.   On April 24, 1880,
Swift executed a deed to Smith, to correct the deed before
mentioned, in which he describes the land as the E. eighty-
two acres of the S. W. $\frac{1}{4}$, and recites that it was his inten-
tion to convey that amount of land by the former deed.
This deed, it will be perceived, includes a strip, about two
rods wide, from the east side of the S. W. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$.
February 5, 1881, one Jacob F. Diley made a deed to *Will-
iam Heinselman*, the plaintiff in error, containing the follow-
ing description: "Commencing at the northwest corner of
the southwest quarter of section 19, town 21 north, of range
15 east; thence running east, along the quarter line, eighty-
six rods, to the corner of lands owned by Michael Smith;
thence south, parallel with the quarter line, 160 rods, to the
center of the highway; thence west, along the center of the
highway, six rods; thence north, along the line of the land
owned by *John Hunsicker*, eighty rods; thence west, along
the line of land owned by *John Hunsicker*, eighty rods;
thence north, along the center of the highway, eighty rods,
to the place of beginning,— containing about forty-six acres
of land, be the same more or less, according to government
survey.   The land not to interfere with Michael Smith's
east eighty-two acres."   The record, so far as we are able to
discover, fails to disclose any title in Diley; but, inasmuch
as counsel for defendant in error, in his brief, admits the ex-
istence of a deed from Swift to Diley, we shall assume that
such a deed was in evidence.   The conditions before re-
ferred to require us to take some things for granted in this

case.   On June 15, 1882, Smith deeded the east eighty-two acres of the S. W. ¼ to the plaintiff in error.     •

Eliminating, for the time being, the question of the suffi-ciency of the description in the Diley deed as a foundation for color of title, we may summarize the condition of the claim of title, as affecting the land in dispute, as follows: Under the deeds from Swift to McClellan, and from the latter to *Hunsicker*, he became invested with the fee-simple title to all the land in the S. W. ¼ of the S. W. ¼, containing 44.11 acres.   Under the claim of title through Swift's alleged "corrected deed," *Heinselman* had a claim of title to a strip, two rods wide, on the east side of *Hunsicker's* land, and, under the Diley deed, to a strip, six rods wide, immediately west.   It was to recover the possession of these two parcels that this action was brought.   The plaintiff in error claims color of title and possession.   Except in the particulars here-inafter noted, there is no serious dispute but that he went into possession of this strip in 1882, and continued such pos-session to the time of the trial.   He claims that he entered into possession of this land under claim of title, exclusive of any other right, founding such claim upon both the Smith and Diley deeds as being conveyances of the premises, and that there has been continual occupation and possession of the same for more than ten years.   In other words, he claims that he has brought himself within the provisions of sec. 4211, R. S. 1878, and that no recovery can be had against him.   *Lampman v. Van Alstyne*, 94 Wis. 417.   So far as the east two rods of this strip are concerned, no question seems to be raised but that the deeds under which *Heinselman* claims purport to convey that land; but, as to the Diley deed, it is urged that the description is so imperfect and uncertain, when applied to the actual conditions, as not to convey even color of title.   There is some force to this contention, but it is thought that the whole description, taken together, can be

Heinselman vs. Hunsicker.

construed so as to cover the disputed tract without doing violence to established rules of construction. There can be no doubt but that a description which is hopelessly uncertain renders the deed void, and such a deed cannot be used as a basis for adverse possession under the statute cited. See Newell, Ejectment, 544. A cardinal rule of construction is that a conveyance of real estate will not be declared void for uncertainty of description when it is possible, by any reasonable rule of construction, to determine what property it was intended to convey. A rational intention must be sought for, and the construction must be consistent with reason and common sense.

The elements of the description which control are: (1) Enumeration of monuments; (2) enumeration of courses and distances; (3) statement of the quantity of the land conveyed. Their relative value in determining the estate is in the order named. In determining inconsistencies between the different elements of the description, the court will give preference to that element or part in which there is the least likelihood of a mistake; hence the monuments will control courses and distances, and courses and distances will control as to the quantity of land stated to be conveyed. Newell, Ejectment, 547, 548, and cases cited. Applying these rules to the Diley deed, we reach the following results: The starting point was the northwest corner of this quarter section; "thence running east, along the quarter line, eighty-six rods, to the corner of lands own by Michael Smith." So far as the record discloses, the " correction deed " from Swift to Smith, in 1880, conveyed to the latter a strip two rods wide on the east side of the N. W. ¼ of the N. W. ¼, and the call in the description would carry the stopping point to the land of Smith, whether it be eighty-six rods, more or less. *Lampman v. Van Alstyne, supra.* The description then says: "Thence south, parallel with the quarter line, 160 rods, to the center of the highway." The evidence shows

Heinselman vs. Hunsicker.

that there was a highway on the south line of the section, and this call would carry the line to the center of the highway, whether it were 160 rods, more or less. The description continues: "Thence west, along the center of the highway, six rods; thence north, along the line of the land owned by *John Hunsicker*, eighty rods; thence west, along the line of land owned by *John Hunsicker*, eighty rods; thence north, along the center of the highway, eighty rods, to the place of beginning." The difficulty with this description arises in that portion which calls for a line running north "along the line of land owned by *John Hunsicker*." At the date of the execution of this deed, *Hunsicker's* line, according to the record title, was some eight rods east of the point where the description locates the starting point to go north; so that it would be impossible to go north from that point "along the line of land owned by *John Hunsicker*." But a reference to the remainder of the description and the situation of the parties fairly discloses the intention of the grantor. Prior to this date, the S. W. ¼ of the S. W. ¼ had been conveyed as containing but forty acres. The grantor undoubtedly supposed, although mistakenly, that *Hunsicker* only owned a tract eighty rods square in the southwest corner of this quarter section. The other calls in this description carry this north and south line to a point on the north line of *Hunsicker's* land eighty rods east of the center of the highway at the west of this land. Construing the whole description together, there seems to be no escape from this conclusion. This results in the rejection of that portion of the call in the north and south line which carries it "along the line of lands owned by *John Hunsicker*." This makes it consistent with the intention and situation of the parties, and gives validity to the whole description. See *Wright v. Day*, 33 Wis. 260. Newell, Ejectment, 551, states the rule as to the rejection of inconsistent elements in the description thus: "In cases where parts of the description of the

premises sought to be conveyed are inconsistent with other parts, but enough of them are sufficiently certain, under reasonable rules of construction, to locate the property which the parties intended to convey, the repugnant elements of the description will be rejected as surplusage, and the instrument construed to convey the premises falling within the consistent elements of the description."

Our conclusion being that the deeds in question are sufficient, as conveyances of this disputed tract, to give countenance to *Heinselman's* claim of adverse possession, we have yet to inquire upon what theory the verdict directed by the court can be sustained. Upon this point we confess ourselves utterly unable to figure out how such a verdict came to be directed. The description of the land in the verdict was as follows: "Commencing on the north line of said S. W. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$, seventy-eight rods fourteen feet $6\frac{84}{100}$ inches from the N. W. corner of said S. W. S. W. $\frac{1}{4}$; running thence due south to a point on the south line of said S. W. S. W. $\frac{1}{4}$, eighty rods seven feet and 7.08 inches from the southwest corner of said S. W. S. W. $\frac{1}{4}$; thence due east, on said south line, eight feet; thence due north, to a point on the north line of the said S. W. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$, eighty rods from the N. W. corner of the said S. W. $\frac{1}{4}$ of S. W. $\frac{1}{4}$; thence west, on the north line, to the place of beginning." This calls for a strip of land eight feet 5.76 inches wide at the north end, and eight feet at the south end, and constitutes a small portion of the disputed strip. We have carefully searched the record, the printed case, and the briefs of both counsel, and are unable to find a syllable of testimony or a suggestion from counsel that will justify this verdict. At the close of the testimony, the plaintiff in error moved the court to direct a verdict in his favor on his defense of adverse possession. In passing upon this motion the court said: "I am inclined to think the proper verdict in this case is for the defendant, except for

the six feet. I do not think the court can be called upon to draw angling lines." Some further testimony was introduced, and then, without any request or motion, the court said: "The verdict will be directed for the plaintiff, because he recovers a small portion of this land," — and the verdict mentioned was accordingly entered. The evidence is so indefinite and uncertain that it is with some misgivings that we attempt to state any fact which it tends to establish. If we understand them, several witnesses on the part of *Heinselman* testify that, prior to 1882, there was a fence on the west side of this disputed strip, running south from the northern extremity for about thirty-five rods; that during that year a fence was built north from the south line forty or fifty rods, leaving a gap of a few rods between the two fences, but which was afterwards connected. The fences remained in that condition until 1890. In the meantime, *Heinselman* occupied the land east of the fences, cleared it of timber, removed the stumps, and cropped a portion of it. In 1890 *Hunsicker* desired *Heinselman* to build his half of the line fence; so they got together, and made some measurements from the southwest corner of the section, and it was then discovered, as they both concluded, that the south end of this fence was about eight feet too far east. *Heinselman* thereupon moved the fence west about that distance at the south end, but to what distance north the removal extended is somewhat in doubt,— probably twenty or twenty-five rods. The fence at the north end remained where it was originally placed. As near as we can tell from the testimony, the fence, as removed, was substantially on the west line of the land in controversy. The only portion not occupied by *Heinselman* for more than ten years is that portion included in his inclosure after the removal of the fence to the west in 1890. This would leave a triangular piece, with a base line of eight feet on the south and running to a point

at the north end, which, under the court's theory, would be all that *Hunsicker* would be entitled to recover; but this piece is not included in the verdict.

On the question of possession the evidence is practically all one way. Smith, the owner of the east part of this quarter section, had possession up to the fence as it stood in 1882. When the fence was completed in that year, *Heinselman* continued such occupation up to the time this suit was brought. The facts disclosed in the testimony would seem to be sufficient to sustain the claim of adverse possession for ten years required by the statute. The recovery in the action should therefore have been limited to that portion of the land between the fence as it was built in 1882 and as removed in 1890, unless the claim of estoppel urged by *Heinselman* should prevail. It is insisted that the fence as originally built, and as removed, was placed by agreement, with full knowledge of the situation; that *Heinselman* was permitted to go on, and clear and improve the land, and ought not now to be ousted from possession. The evidence on these points is in some dispute. At any rate, it is not so clear that the court would be justified in taking it from the jury. It is not considered that mere building of a fence, and the cultivation or improvement of the land up to the line, would be sufficient to establish an estoppel, where the parties labored under a mutual mistake as to the true line. There are some hints in the testimony that neither party knew where the true line actually was, and for that reason we will leave the question of estoppel open, in hope that another trial will bring out the facts more clearly.

Our conclusion is that the deeds referred to are sufficient to sustain a claim of adverse possession, and that the verdict directed cannot be justified by any fact disclosed in the evidence.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.