Gerbig, Respondent, vs. Bell, Appellant.

*April 28—May 24, 1910.*

*Trespass: Cutting of timber: Aiding and abetting: Vendor and pur-
chaser: Disputed boundary: Judgment: Conclusiveness: Title·
to land: Dismissal of action: Costs: Appeal: Printed case.*

1. One who sells and conveys the timber on his own land is not
   liable for a trespass upon adjoining land committed by the·
   purchaser while removing such timber, unless he aided and
   abetted the commission of such trespass.
2. Where the vendor of timber on certain land told the purchaser
   that a fence had been built on what he supposed was the west.
   boundary but that the purchaser should have the line surveyed
   and satisfy himself, and the purchaser afterwards employed a
   surveyor who found that the fence was substantially on the·
   true line, the fact that the vendor was present when the survey
   was made and, with others, shared the expense thereof because
   he wished to know where the line was, would not, if he acted
   in good faith, render him liable for a trespass by the purchaser·
   in cutting to the line of the fence, which was not the true line.
3. Nor could such vendor be deemed to have aided and abetted such
   trespass merely because, when sued therefor, he denied in his·
   answer that any trespass had been committed, and upon the·
   trial sought to show that the line surveyed was correct.
4. While a final judgment is conclusive as to issues arising on the·
   pleadings which were or might have been litigated, it does not,
   in itself, necessarily determine what was litigated or how each·
   particular question was decided; and the facts in that regard·
   may be shown by the findings, by the verdict, by the bill of
   exceptions, or by extrinsic evidence.
5. Thus, in an action for trespass to land, where defendant denied
   plaintiff's ownership and the jury found that plaintiff owned·
   the land but that defendant did not trespass thereon, a judg-
   ment dismissing the complaint would not have the effect to de-
   prive the plaintiff of his land, but on the contrary would be·
   conclusive as to his ownership; and such judgment in the case·
   would be proper.
6. Costs for a printed case violating Supreme Court Rule 6 are dis-
   allowed under Rule 44.

   Kerwin, Siebecker, and Timlin, JJ., *dissenting*, are of the
   opinion that the evidence shows that the vendor of the timber·

aided and abetted the commission of the trespass in cutting to the line of the fence mentioned; and that, even if that were not so, upon the pleadings and the finding of title to the disputed strip in plaintiff the latter was entitled to judgment for nominal damages and costs.

APPEAL from a judgment of the circuit court for Juneau county: J. J. FRUIT, Circuit Judge. *Reversed.*

The plaintiff brought suit to recover the value of some logs and timber alleged to have been wrongfully cut and removed from his lands. The defendant denied that any trespass was committed upon the lands of the plaintiff, and set up as a separate defense that, if any timber was cut upon plaintiff's lands, it was cut without the knowledge, authority, or direction of the defendant, by one Blakeslee, to whom the defendant sold the timber on certain parcels of land owned by him and adjoining those of the plaintiff. The answer also set up some facts tending to show that the plaintiff was estopped from claiming any recovery against the defendant because of the alleged trespass. The jury by a special verdict found that Blakeslee cut and removed certain timber from the lands of the plaintiff, but also found that the defendant did not aid, abet, counsel, or advise Blakeslee to cut the timber beyond the true boundary line between the lands of the plaintiff and the defendant. The value of the standing timber so cut and removed was found to be $12.50, and that the highest market value of the logs into which such timber was cut was $25. Judgment was rendered on this verdict in favor of the plaintiff and against the defendant for $12.50 damages and $272.06 costs, from which judgment this appeal is taken.

*J. T. Dithmar,* attorney, and *Daniel H. Grady,* of counsel, for the appellant.

*James A. Stone,* for the respondent.

BARNES, J. The defendant owned the S. W. ¼ of the N. W. ¼ and the N. W. ¼ of the S. W. ¼ of section 32. The

plaintiff owned the adjoining forties immediately west thereof in section 31. Defendant sold and conveyed the timber on thirteen parcels of land owned by him, including that on the two parcels above described, to one Blakeslee. The latter, while removing said timber, cut some trees on the land of the plaintiff. Judgment has been recovered against the defendant for such trespass.

The defendant had the right to sell and convey the timber which he owned. If he is liable for the trespass committed by Blakeslee, it must be because he aided and abetted in the commission of it.

The jury found that the defendant did not aid, abet, counsel, or advise Blakeslee to cut the timber to the west of the true boundary line. The court set this finding aside. The evidence to sustain it appears to us to be not only ample, but practically uncontradicted. The plaintiff had caused a survey of the land to be made some time before this transaction took place, and had built a fence on the line of his survey, but not along its entire length. Blakeslee cut the timber to this line. The defendant testified that he never pointed out his west line to Blakeslee nor told him where it was; that he told him there was a fence on the west side which he supposed to be the line; that Blakeslee wanted defendant to show him the line, but he told him he would have to get a surveyor, which he did; that he did not tell Blakeslee the fence was the line and that he would stand by it; that he never pointed out to Blakeslee the timber he sold him; that he stayed with him while the line was being surveyed, and contributed to the cost because he wanted to know where the west boundary of his land was; that at no time did he point out to Blakeslee in any way, shape, or form the lines which would limit his operations; and that he never cut or removed any timber from the disputed strip himself.

The testimony simply amounted to this: Defendant conveyed the timber on two government descriptions in section

32 as well as on other lands.    He told his vendee that plaint-
iff had built a fence which he supposed formed the west
boundary line of said parcels, but he did not know, and that
the purchaser should have the line surveyed and satisfy him-
self.    Blakeslee, after he made the purchase, employed a sur-
veyor, who found that the fence substantially formed the true
boundary line, and defendant was present when the survey
was made and contributed to the expense thereof because he
wanted to know the correct boundary line of his land.    Two
other parties besides *Bell* and Blakeslee also contributed to
the expense.    Each of the parties so contributing had a
separate and distinct purpose in view, and that was to ascer-
tain the correct boundary of his own property.    We are un-
able to see how such a course of conduct could be construed
as rendering the defendant liable as an aider and abettor of
Blakeslee in committing the trespass which he did commit.
There is nothing to show that defendant attempted to in-
fluence the judgment of the surveyor in reference to his sur-
vey.    He claimed on the trial that the line established was
the true boundary line, but this he had a perfect right to do.
As owner of the land to the east of the disputed line he had a
right to offer evidence as to the location of the true line.
Such evidence was competent and proper on the question as to
whether Blakeslee committed a trespass.    By offering it the
defendant neither aided nor abetted the trespass committed
by his vendee.    The timber had then been cut several years.
He had a right to participate in the cost of the survey be-
cause he was interested in knowing the location of his west
boundary line.    He could hardly be convicted of a trespass
on this account.    It was immaterial to the defendant where
the line was located in so far as it affected the timber.    That
had already been sold by him, and the location of the line
could neither add to nor subtract from the amount which he
had received therefor.    If the surveyor was mistaken, and
Blakeslee committed trespass by cutting to his line, it is dif-

ficult to see how the defendant thereby became a wrongdoer. If he was a wrongdoer, then the other parties who shared in the cost of the survey with Blakeslee and the defendant were likewise trespassers and liable. The making of the survey did not constitute the trespass complained of. It was a perfectly lawful and an obviously necessary act. If it was not correct, those who relied on it, and thereby injured their neighbors, would become trespassers, but not those who innocently participated in making it for their own information. The employment in good faith of the surveyor was not a trespass on the part of any one. It was Blakeslee's legal duty, under the circumstances disclosed by the testimony, to have the line surveyed. Had he failed to do so, and cut on plaintiff's land, he might well be held for a wilful trespass. Sec. 4269, Stats. (1898); *Brown v. Bosworth,* 58 Wis. 379, 17 N. W. 241; *Underwood v. Paine L. Co.* 79 Wis. 592, 48 N. W. 673. If Blakeslee had an unlawful purpose in view, it would not follow that the others who shared in the expense of the survey were liable if they acted innocently. In *Richardson v. Emerson,* 3 Wis. 319, 321, it is said:

"Where several persons are engaged in the accomplishment of a lawful object, if one or more shall become a tortfeasor, even with a view to aid such purpose, the others, who neither direct nor countenance such tortious acts, are not liable."

We fail to see how any significance can be attached to the fact that the defendant sought to establish on the trial that no trespass had been committed on plaintiff's land. The two defenses interposed were not repugnant. So long as they were not, the defendant had the right under the Code to rely on any defense that would defeat the plaintiff's action. Sec. 2657, Stats. (1898); *South Milwaukee B. H. Co. v. Harte,* 95 Wis. 592, 70 N. W. 821; *Roberts v. Decker,* 120 Wis. 102, 97 N. W. 519; *J. H. Clark Co. v. Rice,* 127 Wis. 451, 457, 106 N. W. 231. He would not commit a tort by so doing. It would be far-fetched to hold that, because the

defendant denied in his answer that any timber had been cut on the land of the plaintiff, and so contended on the trial, he therefore aided and abetted in the commission of a trespass done thereon over four years before the answer was made. Judgment should have been rendered on the verdict for the defendant on the trespass issue.

Some question has arisen as to the form of judgment which should be entered. The answer puts in issue the plaintiff's title to the disputed strip. The plaintiff has prevailed on such issue. Should the judgment go in favor of the plaintiff, with nominal damages, because he has succeeded in establishing his title, or should it go for defendant because he did not commit any trespass? The answer to this question determines which party should recover costs, and the costs recovered are more than twenty times the amount of the damages awarded. If a judgment for defendant dismissing the complaint would have the effect of depriving the plaintiff of the parcel of land in controversy, then it should not be entered, because it would be contrary to the finding of the jury. But we do not think it would have any such effect. The action is one to recover damages for a trespass for cutting and removing timber, not to establish title to real estate. Whatever judgment is rendered in the action is final as to the rights of the parties as to the cause of action litigated. It would not necessarily be final as to any other or different cause of action between the parties. As to such a cause of action it would be final only as to questions actually litigated. The ascertainment of what questions have been litigated in an action presents pure questions of fact which are not necessarily established by the pleadings and judgment, but which may be shown by the findings of the court or a referee, by the verdict, by the bill of exceptions, or by extrinsic evidence, as well as by the pleadings and judgment. The issue of title having been raised by the pleadings and having been litigated, and the jury having found in plaintiff's favor thereon, such

finding is conclusive as to the rights of the parties. This is just as true under a judgment dismissing the complaint because no trespass was proven, as it would be if judgment went in plaintiff's favor. In trials it frequently happens that the litigant who recovers judgment is defeated on certain issues that are tried. As to any issue that is tried and determined by the finding of a court or the verdict of a jury, the final judgment rendered sets the question at rest. In a subsequent action to try title to the land the court would inquire what issues were raised and tried in the trespass suit and how such issues were decided, and, as to such issues as were decided, the former action would be conclusive. The verdict rendered in the case before us would conclusively show that the plaintiff owned the disputed strip and that the defendant did not commit any trespass thereon. *Grunert v. Spalding,* 104 Wis. 193, 213, 80 N. W. 589, and cases there cited; *Emmons v. Dowe,* 2 Wis. 322; *Murphey v. Weil,* 92 Wis. 467, 66 N. W. 532; *Morgan v. C., M. & St. P. R. Co.* 83 Wis. 348, 53 N. W. 741; *Fulton v. Pomeroy,* 111 Wis. 663, 87 N. W. 831; *Rowell v. Smith,* 123 Wis. 510, 102 N. W. 1; *Moehlenpah v. Mayhew,* 138 Wis. 561, 577, 119 N. W. 826. While a final judgment is conclusive as to issues arising on the pleadings which were or might have been litigated, it does not in itself necessarily determine what was litigated or how each particular question was decided.

The printed case is not "an abridgment of the record so far as necessary to present the questions for decision" that are involved on the appeal, as required by Rule 6 of this court. It is far from it. A case containing twenty pages might well present all of the record that should have been printed. The case contains 142 pages including the index. Under Rule 44 of this court the appellant is not entitled to any costs for printing such a case. *Griffiths v. Cretney,* ante, p. 143, 126 N. W. 875; *Swanke v. Herdeman,* 138 Wis. 654, 120 N. W. 414; *Sparks v. Wis. Cent. R. Co.* 139

Wis. 108, 120 N. W. 858; *Steinberg v. Salzman,* 139 Wis. 118, 120 N. W. 1005; *Johanson v. Webster Mfg. Co.* 139 Wis. 181, 120 N. W. 832; *Herring v. E. I. Du Pont de Nemours P. Co.* 139 Wis. 412, 121 N. W. 170; *Keeley v. G. N. R. Co.* 139 Wis. 448, 121 N. W. 167; *Neale v. State,* 138 Wis. 484, 120 N. W. 345; *Roach v. Sanborn L. Co.* 140 Wis. 435, 122 N. W. 1020.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to reinstate the answer of the jury to the third question in the special verdict and to render judgment on the verdict rendered by the jury, dismissing the complaint because the plaintiff failed to prove a cause of action in trespass. The clerk is directed not to tax any costs for printing the case.

KERWIN, J. (*dissenting*). Error is assigned in the charge, in allowing costs to plaintiff and in changing the answers to questions Nos. 2 and 3 of the special verdict. The jury found:

"(2) Did the plaintiff by his conduct and by the erection of the fence, as shown by the testimony, on the easterly side of his land, lead the parties cutting the timber to believe and rely upon the same as the true boundary line between the parties hereto? *A.* Yes.

"(3) Did the defendant, *Bell,* aid, abet, counsel, or advise Blakeslee to cut the timber to the west of the true boundary line between the lands of these parties? *A.* No."

The court changed the answer to question No. 2 from "Yes" to "No," and the answer to question No. 3 from "No" to "Yes." The majority opinion is based upon the propositions that the answers to questions Nos. 2 and 3 were well supported by the evidence and that it was error to change them, and that upon the record the defendant was entitled to recover. It is settled by the verdict that the disputed tract where the timber was cut belonged to the plaintiff, and that question is not contested here. In my opinion, upon the

undisputed evidence the court below was warranted in changing the answers to questions 2 and 3 of the verdict. The following evidence is undisputed: In 1894 Patterson made a survey for plaintiff, and plaintiff constructed a fence, to accommodate his cattle, of two or three wires attached to trees and some posts and not straight, upon the Patterson line, at some points on one side and at others on the other side of the line between sections 31 and 32, but not the whole length, there being a gap of something like forty rods; that plaintiff always claimed that this fence was not on the line and at some points cut timber and occupied the land east of it; that defendant, *Bell,* knew this when he sold the timber in question to Blakeslee, and, after the sale to Blakeslee, defendant, Blakeslee, Stickney, Moe, and Biers joined in a survey, each paying one fifth of the expense, for the purpose of determining the line; that the plaintiff also after the sale of the timber to Blakeslee procured a survey and established what is known in this case as the Keach line and which the jury found to be the true line between sections 31 and 32; and that this line brings the timber cut upon the land of plaintiff and east of the Patterson line. In speaking of the sale of the timber to Blakeslee defendant testified:

"He asked me where the line was, and I told him there was a fence on the west side. . . . I told him that that was supposed to be the line. I told him the farm was fenced except around this government forty, the southwest quarter of the southwest quarter of 32."

Defendant further testified that at the time he made the contract with Blakeslee he told him there was a fence on the plaintiff's east line, but told him he did not know it was on the line; that when he sold to Blakeslee he claimed to the fence and claimed it up to the time of trial, to the line as surveyed by Patterson. When defendant bought his land plaintiff had a fence on part of the line, but was cultivating land east of it. Defendant testified that plaintiff

never told him before the surveys of Kennedy and Barney where his line was. The Kennedy and Barney survey was after the timber was cut. Defendant testified that he relied upon the Patterson survey as his line. Defendant's land adjoining plaintiff's land had never been inclosed. Before defendant entered into the contract with Blakeslee he went upon the land with him and told Blakeslee there would have to be a survey for the purpose of freshly determining where the several lines stood at the time. Defendant and Blakeslee had a survey made before the timber was cut which adopted the Patterson line. From an examination of the evidence I am convinced that the court below was right in changing the answers to questions 2 and 3.

The second question relates to estoppel on the part of the plaintiff by his conduct. But the evidence establishes without dispute that the defendant or Blakeslee did not rely upon the fence or the conduct of plaintiff. The line was in dispute and known to all parties to be in dispute. Defendant and Blakeslee obtained a survey and stood upon it. Plaintiff also procured a survey and insisted upon it as the true line, and the jury held with plaintiff. There is no evidence that defendant or Blakeslee was misled by any act of plaintiff. There is no question of estoppel in the case; the defendant in no way changed his position on account of any conduct of the plaintiff. Defendant acted upon his own investigation and knowledge thus obtained. Under such circumstances there can be no estoppel. *Hartung v. Witte,* 59 Wis. 285, 18 N. W. 175; *Heinselman v. Hunsicker,* 103 Wis. 12, 79 N. W. 23; *Fox River F. & P. Co. v. Kelley,* 70 Wis. 287, 35 N. W. 744.

Respecting the third question submitted to the jury, I think the evidence is undisputed that the defendant did aid, abet, counsel, or advise Blakeslee to cut timber west of the true boundary line between the lands of the parties. We need not repeat the undisputed evidence on this point. It is

clearly, in my opinion, an authorization from defendant to cut and remove the timber up to the Patterson line. The position that the Patterson survey marked the true line was asserted and maintained by defendant from the time of the sale to time of trial, and during the trial, and as a defense defendant claimed title by adverse possession to the disputed tract. The defendant sold the timber to Blakeslee, went upon the land with Blakeslee, and put him in possession of the disputed strip for the purpose of cutting and removing the timber. He asserted that in his opinion the Patterson survey was correct. He paid part of the expense of a survey to establish that line as the one forming the west boundary of the disputed strip. He acted upon that boundary and sanctioned the removal of the timber up to it. He continually asserted his ownership at all times up to the rendition of the verdict on trial below in this case.

I see no escape from the conclusion upon the undisputed evidence that the defendant aided, abetted, encouraged, or directed the perpetration of the trespass, and therefore the court below was right in changing the answer of the jury to the third question of the special verdict and ordering judgment for the plaintiff. *McCloskey v. Powell,* 123 Pa. St. 62, 16 Atl. 420; *Northern T. Co. v. Palmer,* 171 Ill. 383, 49 N. E. 553; *Donovan v. Consolidated C. Co.* 88 Ill. App. 589; *Hamilton v. Hunt,* 14 Ill. 472; *McMannus v. Lee,* 43 Mo. 206; *Clark v. Bales,* 15 Ark. 452; *Bruch v. Carter,* 32 N. J. Law, 554; *Judson v. Cook,* 11 Barb. 642; *Shepherd v. McQuilkin,* 2 W. Va. 90; *Deal v. Bogue,* 20 Pa. St. 228. In *Donovan v. Consolidated C. Co.* 88 Ill. App. 589, at page 597 the court said:

"One who in any manner indicates his desire that an act be done may be said to request it, and one who does anything in furtherance of an act may be said to aid or abet it."

There was no error in the portion of the charge excepted to or in awarding costs to plaintiff.

Second. The complaint averred that the plaintiff was the owner in fee simple and in possession of the lands claimed by him, and that the defendant unlawfully entered upon a strip thereof. The defendant denied the plaintiff's title, and further averred that he (the defendant) and his predecessors and grantors "have held the strip of land and premises and been in the actual continued occupancy and possession of the whole thereof . . . for more than twenty years immediately preceding the commencement of this action and of the dates alleged in the complaint; that during the said twenty years the said strip of land . . . has been improved and used for pasture and other farming purposes *by the said defendant.*"

The defendant by his pleadings therefore admitted a trespass on his part and justified that trespass by virtue of his ownership of the strip of land and pleaded adverse possession. Participation in the cutting of timber on this strip by his vendee the defendant denied. But he admitted a trespass and an adverse possession. The plaintiff prevailed on the title to the strip. Therefore on the pleadings alone, with the finding of title in the plaintiff, the latter was entitled to judgment for nominal damages and costs, even if upon the evidence the view of the majority of the court as to the nonliability of the defendant for the cutting and removal of timber by his vendee could be considered sound.

SIEBECKER and TIMLIN, JJ. We concur in the foregoing dissenting opinion.