PITMAN, Respondent, vs. HILL, Appellant.

*February 27—March 21, 1903.*

*Adverse possession under written instrument: Assignment of certificate of entry: Mortgage: Good faith.*

1. An assignment of a certificate of entry of government land, in terms conveying the same and the land therein described, is a sufficient written instrument upon which to found adverse possession under secs. 4211, 4212, Stats. 1898, even though the purpose of the parties was to make a mortgage and not a conveyance of the title, and even though the mortgage indebtedness has been paid.
2. Use of land, otherwise wild and unoccupied, as a wood lot, the adverse claimant having taken wood therefrom for his ordinary use annually for the full statutory period, together with payment by him of the taxes during that period, constituted adverse possession by such claimant, under sec. 4212, Stats. 1898; and it is immaterial whether his claim was made in good faith or bad faith.

APPEAL from a judgment of the circuit court for Polk county: A. J. VINJE, Circuit Judge. *Affirmed.*

Action to quiet title. The complaint is in the usual form. Defendant answered, alleging that she was the only heir at law of Benjamin F. Stetson, deceased; that in his lifetime he was owner and possessor of United States land warrant No. 4,571, calling for 420 acres of government land; that one

B. P. Pitman, as agent of Stetson, selected and entered under said land warrant the lands in question, to wit, the southeast quarter of the southeast quarter of section 12, town 33, range 19 west, in Polk county, Wisconsin; that plaintiff claims under said B. P. Pitman, and that the only way the latter became interested in the land was through an assignment by Stetson of the land warrant, made August 10, 1861, by which the said warrant was conveyed to Pitman to secure payment of a promissory note for $34.07 with interest thereon, the principal and interest being made payable on or before the 1st day of November, 1861; that the assignment was made in connection with an agreement in writing by Pitman to reconvey the property assigned to Stetson upon his paying the note; that the note was paid and that thereby the mortgage debt of Pitman was extinguished; that by reason of the facts defendant is the sole owner of the lands in question, and that plaintiff has no right, title, or interest therein.

The following documentary evidence was produced upon the trial: A receipt given by B. P. Pitman to Benjamin F. Stetson for the land warrant mentioned in the answer, the receipt specifying that Pitman was to locate the land called for by the warrant and to have $25 for his services and reimbursement for all sums paid for officer's fees; a certificate of location of the land in question made by the proper officers of the United States land office at Hudson, Wisconsin; a United States patent of the land to Stetson; a note apparently made by Stetson, corresponding to the one mentioned in the answer, written on the same sheet with an agreement made by B. P. Pitman to the effect that if Stetson should pay the note Pitman would assign to him all his, Pitman's, right, title, and interest in the property in question and two other tracts of land, the three tracts together corresponding with the acreage called for by the land warrant; an assignment on the certificate of location before mentioned, in terms conveying such certificate

and the land therein described to Pitman, and authorizing him to receive the patent therefor, the said assignment being executed by Stetson and his signature thereto being witnessed by one witness and the execution thereof properly acknowledged. The patent, certificate of location, and assignment thereon, came from the possession of plaintiff, and were found among his father's papers. The note and agreement came from the possession of defendant, and were found among her father's papers.

Due proof was made that B. P. Pitman exercised acts of ownership over the land by annually taking wood therefrom for his ordinary purposes, and cutting some timber, for a period of more than twenty years after he became possessed of the certificate of entry and the assignment; that he exercised such acts of ownership up to the time of his death, and that whatever interest he had in the property passed by his will to plaintiff; that plaintiff continued to use the property substantially the same as his predecessor; that plaintiff and his father have paid the taxes on the property during all the time they exercised acts of ownership over the same. There was further proof that the land was wild and unoccupied territory during all the time subsequent to the entry, except as the same was used as a woodlot as before indicated. The land was entered June 6, 1859, by Stetson. It was patented to him August 3, 1860. The assignment of the certificate of entry is dated August 10, 1861.

The court found, respecting the entry of the land, the issuance of the patent therefor, and the assignment of the certificate of entry, in accordance with the foregoing; that Stetson, for a valuable consideration, August 10, 1861, sold and assigned the land warrant mentioned, and the land described in the complaint, to plaintiff's father, who, from 1873 to the time of his death, November 17, 1896, used the land annually for a supply of fuel and timber for his ordinary use, and that he

paid the taxes on the property during all that period; that whatever interest he had at the time of his death passed by will to plaintiff; and that plaintiff was the owner in fee simple of the property at the time of the commencement of this action.

Upon such facts the court decided that plaintiff was entitled to the relief prayed for, and judgment was entered accordingly.

For the appellant there was a brief by *Mons P. Jerdee,* attorney, and *Sanborn & Sanborn,* of counsel, and oral argument by *A. L. Sanborn* and *J. B. Sanborn.* They contended, *inter alia,* that the assignment of the certificate of location, intended only as a mortgage, was no such color of title as would enable Pitman to hold adversely under secs. 4211, 4212, Stats. 1898. A mortgage is not a conveyance of the premises. *Massie v. Meeks* (Tex. Civ. App.) 28 S. W. 44; *Johnson v. Davidson,* 162 Ill. 232, 44 N. E. 499. The relation between the mortgagor and mortgagee is such that the former cannot hold adversely to the latter under statutes of limitation which allow adverse possession without any claim to title, unless the mortgagee has done some act which will assert the adverse character of his possession. 1 Am. & Eng. Ency. of Law (2d ed.) 817. The rule applies equally well to one who takes possession under a deed absolute on its face, but which is in fact a mortgage. *Husheon v. Husheon,* 71 Cal. 407, 12 Pac. 410.

For the respondent there was a brief by *Frank B. Dorothy,* and oral argument by *W. F. Bailey.*

MARSHALL, J. It is conceded that if the trial court was correct in drawing the inferences that are embodied in the findings of fact, the judgment must be affirmed. The sole question for consideration, therefore, is, Are such findings contrary to the clear preponderance of the evidence? It

hardly needs more than the statement of the evidence found in the foregoing to solve that proposition, when we apply thereto the rules of law governing the subject.

The assignment of the certificate of entry, in terms conveying the same and the land therein described to respondent's predecessor, was a sufficient written instrument upon which to found adverse possession under secs. 4211, 4212, Stats. 1898. Grant that the purpose of the parties was to make a mortgage and not a conveyance of the title, and grant, also, that the mortgage indebtedness has been paid; still there is evidence from which the court was warranted in coming to the conclusion that respondent's predecessor held adverse possession under the instrument for the full statutory period necessary to give him full title to the property. A mere mortgagee of land has no right to the possession thereof. In this case respondent's father, under the written instrument mentioned,—let it be a mortgage or a full conveyance, it makes no difference which we call it,—took possession of the property and treated it as his own for more than twenty years, and his conduct during the whole time was consistent only with the idea that his possession was adverse. Ten years would have been sufficient. Such conduct by a mortgagee is sufficient to give him title by adverse possession. *Knowlton v. Walker,* 13 Wis. 264; *Waldo v. Rice,* 14 Wis. 286. The acts of ownership were open, continuous, hostile, and of a nature to satisfy all the essentials of adverse possession under or independently of the statute. *Lampman v. Van Alstyne,* 94 Wis. 417, 69 N. W. 171. They consisted of using the premises for a woodlot, the adverse possessor taking wood therefrom for his ordinary use annually for the full statutory period. That satisfies to the letter subd. 3, sec. 4212, Stats. 1898. To that we have added the significant circumstance of the payment of the taxes, which is inconsistent with any other theory than that the payor claimed the property as his own. Whether his claim was in good faith or bad faith of course makes no difference.

*Lampman v. Van Alstyne, supra.* The continued use of the property as indicated, by force of the statutes, secs. 4210, 4211, displaced the presumption that it was subordinate to the rights of a superior owner, and substituted in its place the presumption that the use was characterized by all the elements of adverse possession necessary to cut off the title of a once superior owner, if there were such, and vest a complete title in fee in the hostile claimant. Secs. 4210, 4212, Stats. 1898; *Carmody v. Mulrooney,* 87 Wis. 552, 58 N. W. 1109; *Wilkins v. Nicolai,* 99 Wis. 178, 74 N. W. 103; *Wollman v. Ruehle,* 100 Wis. 31, 35, 75 N. W. 425; *Bishop v. Bleyer,* 105 Wis. 330, 81 N. W. 413; *Illinois S. Co. v. Budzisz,* 106 Wis. 507, 82 N. W. 534; *Meyer v. Hope,* 101 Wis. 123, 77 N. W. 720.

Now, where is the evidence to rebut that state of the case? Our attention is called to none except the circumstance that the note claimed to represent the indebtedness which was the foundation of the transaction of turning the certificate of entry over to respondent was found in the possession of the maker, indicating that it was a paid obligation. There are circumstances about the paper itself to impair its weight as evidence that it is a paid obligation. It was attached to a paper which naturally belonged from the beginning in the possession of the maker of the note. That, as suggested by respondent's counsel, indicates that the note may never have been used at all; that is, that it never became an obligation because never delivered to the payee. Again, if the note was paid, and was the foundation of the transaction whereby respondent's predecessor came into possession of the certificate of entry and the assignment of it, possession thereof by the maker would rather.indicate that the action of such predecessor was hostile. If he paid the note yet respondent's predecessor retained the certificate of entry and the conveyance thereof, and treated the land.as his own, even if the paper were in form as well as in fact a mortgage, such conduct

would seem to corroborate the idea of adverse possession rather than rebut it. On the whole we can see no justification for holding that the trial court found the facts against the clear preponderance of the evidence.

*By the Court.*—The judgment is affirmed.