GUNNISON et al. v. CHICAGO, M. & ST. P. RY. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. April 12, 1904.)

No. 1,009.

1. LIMITATION—SUIT TO ENFORCE RAILROAD MORTGAGE—ADVERSE POSSESSION.

Defendant railroad company purchased a line of road in Wisconsin in 1867, under a decree ordering it sold to satisfy a judgment rendered in 1857. The decree directed the sale of, and the marshal's deed purported to convey, all the right, title, and interest of the company against which

the judgment was rendered, and which was at the time of its rendition the owner of the property, together with its franchise, subject to certain stated prior liens. Defendant took possession and thereafter retained and operated the road, incorporating it with its system, making large improvements, and paying off the stated incumbrances prior to the judgment, amounting to $3,000,000. In 1859 the road had been sold under a mortgage subsequent to the judgment, and the purchasing company in 1864 issued bonds secured by mortgage. Defendant never recognized the validity of such mortgage as against its own title, and no part of either principal or interest of the bonds was ever paid. In 1898 complainants, claiming to be owners of most of such bonds, brought suit to enforce the mortgage. The Wisconsin 10-year statute of limitations (Rev. St. 1898, § 4211), in force since 1858, provides that "where the occupant, or those under whom he claims, entered into the possession of any premises under claim of title, exclusive of any other right founding such claim upon some written instrument as being a conveyance of the premises in question or upon the judgment of some competent court, and there has been a continual occupation and possession of the premises included in such instrument or judgment under such claim for ten years the premises shall be deemed to have been held adversely." *Held*, that under such statute defendant held adversely to the mortgage from the time it went into possession in 1867, and the right of action to enforce such mortgage became barred in 10 years thereafter.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

For opinion below, see 117 Fed. 629.

In the year 1858 the La Crosse & Milwaukee Railroad Company owned and operated a railway extending from Milwaukee, by way of Beaver Dam and Horicon, to Portage City, and thence to La Crosse, the railway from Milwaukee to Portage City being denominated the "Eastern Division," and the road from Portage City to La Crosse being called the "Western Division." The incumbrances upon the property on June 1, 1858, were as follows:

Upon the Eastern Division:
   (1) A mortgage to Palmer, as trustee, to secure an issue of bonds to the amount of........................... $ 950,000 00
   (2) Two mortgages to the city of Milwaukee to secure issues of bonds to the amount of.................... 314,000 00
   (3) A mortgage to Bronson and Soutter to secure an issue of bonds to the amount of........................ 1,000,000 00
Upon the Western Division:
   (1) A mortgage to Bronson, Soutter, and Knapp, trustees, known as the "Land Grant Mortgage," to secure an issue of bonds to the amount of................... 4,000,000 00
   (2) A mortgage to Helfenstein, trustee, to secure an issue of bonds to the amount of....................... 200,000 00
The entire road was also subject to two judgments:
   (1) A judgment in favor of Selah Chamberlain, in the Circuit Court of the United States for the District of Wisconsin, rendered October 2, 1857, for............ 629,089 72
   (2) A judgment in favor of Newcomb Cleveland, in the Circuit Court of the United States for the District of Wisconsin, October 7, 1857, for................... 111,727 31

On June 1, 1858, the company executed another mortgage to William Barnes, trustee, upon the entire line of railway, to secure the payment of an issue of $2,000,000 of bonds. At this date the entire railway was in the possession of and operated by receivers of the La Crosse & Milwaukee Railroad Company, appointed in suits brought in the United States Circuit Court for the District of Wisconsin to enforce prior liens. Upon default in payment of the first installment of interest, a statutory foreclosure of this mortgage was had, and on the 21st of May, 1859, the railway was purchased by Barnes, as trustee.

The bondholders thereupon organized the Milwaukee and Minnesota Railroad Company (herein for brevity designated the "Minnesota Company"), to which company William Barnes, as trustee and purchaser, conveyed the railway. On October 24, 1864, the Minnesota Company executed a mortgage to James H. Fonda and G. Hilton Scribner, as trustees, to secure an issue of bonds to the amount of $600,000, maturing July 1, 1884, with interest semiannually at the rate of 8 per cent. per annum. This mortgage was upon the railway of that company extending from the city of Milwaukee to Portage City, a distance of 95 miles, being the Eastern Division of the La Crosse & Milwaukee Railroad Company. The Western Division in April, 1863, was sold, upon foreclosure of the land grant mortgage, to purchasers who organized the Milwaukee & St. Paul Railway Company, now the Chicago, Milwaukee & St. Paul Railway Company (herein for brevity called the St. Paul Company). On January 20, 1866, the Eastern Division was turned over to the Minnesota Company, under an order of the Circuit Court of the United States for the District of Wisconsin, in a suit to foreclose the Bronson and Soutter mortgage, which order provided that upon payment of the interest due on the bonds issued under that mortgage, amounting to $462,057.80, the Minnesota Company should be let into possession of the railroad from Milwaukee to Portage.

On April 18, 1866, Frederick P. James, then the owner of the Cleveland judgment, filed his bill in the Circuit Court of the United States for the District of Wisconsin against the Minnesota Company to enforce the lien of that judgment, and praying, among other things, that the Eastern Division of the railway might be decreed to be sold under the order and direction of the court, subject to the mortgages to Palmer, trustee, the city of Milwaukee, Bronson and Soutter, trustees, and the judgment of Selah Chamberlain. The Minnesota Company answered to the suit, and on January 7, 1867, a decree passed adjudging the sum of $98,801.51 to be due on the Cleveland judgment, and that such judgment was a lien, as of the date of October 7, 1857, upon the right, title, and interest of the La Crosse & Milwaukee Railroad Company in and to the railway from Milwaukee to Portage City, together with its rolling stock, franchises, and appurtenances, and directing a sale of the railway, its rolling stock, franchises, and appurtenances then in the possession of and claimed by the Minnesota Company, unless, prior to the sale, the amount adjudged to be due upon the judgment should be paid; directing the sale to be made subject to the stated mortgages and judgment liens; that, upon confirmation, the marshal execute a deed to the purchaser; that the Minnesota Company and all persons claiming under it be barred and foreclosed from all equity of redemption; that the purchaser be let into possession; and that the Minnesota Company deliver possession to the purchaser. On March 2, 1867, the property was duly sold by the marshal to the St. Paul Company for $100,920.94, which sale was confirmed and a deed executed by the marshal, whereupon that company entered into possession of the railroad property and franchises, claiming to be the owner thereof under that decree, sale, and deed, subject to the stated prior mortgages and judgments, and since then has continued in possession, without in any manner accounting to the trustee or bondholders under the Fonda and Scribner mortgage, or in any way recognizing it or the debt thereby secured as a lien upon the railway property or franchises, and has claimed to be in the actual, open, notorious, and adverse possession of the railway and of the franchises of the La Crosse & Milwaukee Railroad Company. On March 2, 1867, Albert C. Gunnison and Aaron S. Bright, claiming to be stockholders in the Minnesota Company, petitioned the court, in the suit brought by Frederick P. James, that an appeal might be allowed from the decree to the Supreme Court of the United States, and that they be allowed to use the name of the Minnesota Company in taking such appeal. This petition was granted, and the appeal was taken by Gunnison and Bright. This appeal was heard by the Supreme Court, and on March 16, 1868, the decree was affirmed, the court stating: "By the statute law of Wisconsin, judgments are liens on real estate, and we do not doubt but that this judgment became a lien on the road from the time of its rendition, and that a sale under a decree in chancery, and conveyance in pursuance thereof, confirmed by the court, passed the whole of the interest of the company existing at the time of its rendition to the purchaser." Railroad Company v. James, 6 Wall. 750, 18 L. Ed. 854.

On January 31, 1868, a bill was filed in the Circuit Court of the United States for the Eastern District of Wisconsin, in the name of Scribner, as surviving trustee under the mortgage executed by the Minnesota Company to Fonda and Scribner as trustees (being the mortgage in suit), against the St. Paul Company and the Minnesota Company, reciting the foreclosure of the land grant and Barnes mortgages, the organization of the St. Paul Company and the Minnesota Company, the execution of the Fonda and Scribner mortgage by the Minnesota Company, the proceedings in the James suit, the sale to the St. Paul Company thereunder, and the possession by the purchasing company of the Eastern Division. The bill charged that the Cleveland judgment upon which the decree was rendered was not a charge upon the Eastern Division, and that such division could not lawfully be subjected to the payment of that judgment; that the decree was without force against Scribner, trustee, or the bondholders, because they were not parties to the James suit; that the right to contest the judgment and to redeem from the incumbrances upon the property remained unaffected by the decree and sale; that the St. Paul Company, being in the exclusive possession and control of the Eastern Division, had received its earnings and income, and had not applied any part of them to the interest upon the prior incumbrances; and prayed for an account of the earnings and for a receiver, and, if the Cleveland judgment should be decreed to be a valid lien, superior to the lien of the Scribner mortgage, that the earnings of the road during the possession by the St. Paul Company might be applied to the redemption of that judgment, and, if such earnings should prove insufficient, Scribner, trustee, might be permitted to pay the deficiency to the St. Paul Company, and be let into possession of the Eastern Division. The process under this bill was served and a rule to plead entered, but, without further proceedings, the suit remained pending for nearly four years, when, on February 26, 1872, on motion of the complainant's counsel, the bill was dismissed. It is possibly doubtful if Scribner had knowledge of this suit until long after its discontinuance, but it is not doubtful that Gunnison and Bright knew of it, sanctioned and directed it. No further proceedings by the trustees under the Fonda and Scribner mortgage, or of the holders of the bonds secured thereby, was had until May, 1893, when Richard Carmen Combes, under some arrangement with Albert C. Gunnison and Aaron S. Bright, who claimed to own and control $336,000 of bonds issued under the Scribner mortgage, attempted to bring an action at law against the Minnesota Company in the Circuit Court of Milwaukee County, Wis., on $332,000 of such bonds. An order of the publication of the summons under the state practice was procured. Dwight W. Keyes, claiming to be a stockholder of the Minnesota Company, if it existed as a corporation, moved to set aside the order for the service of the summons by publication, upon the ground that the company had long before that order voluntarily surrendered its corporate franchises and was then nonexistent. The motion was denied, but upon appeal the Supreme Court of Wisconsin, on February 5, 1895, reversed the action of the court below, holding that by the judicial sales the corporation had been divested of all its property, and for 26 years thereafter had not owned any property, or done any business, or elected any officers, or kept any office in the state, and thereby had voluntarily surrendered all of its corporate franchises and had ceased to exist, and therefore could not be sued. Coombes v. Keyes, 89 Wis. 297, 62 N. W. 89, 27 L. R. A. 369, 46 Am. St. Rep. 839. No further action was had respecting the Scribner mortgage, or the bonds issued thereunder, until March 30, 1897, when the bill now under review was filed. The bill recites the execution of the Fonda and Scribner mortgage, the Cleveland judgment, the decree thereon, and sale thereunder; asserts that the judgment was not a lien upon the franchises of the La Crosse Company, notwithstanding the decree; that the franchises were not sold or conveyed, or, if sold, were sold and conveyed subject to the prior lien on them of the Fonda and Scribner mortgage; that the latter mortgage was still a lien upon the franchises in the hands of the St. Paul Company; that Albert C. Gunnison, and George A. Bright as administrator of Aaron S. Bright, were the lawful owners of 500 of the 600 bonds secured by the Fonda and Scribner mortgage, which are due and unpaid, with interest from the time of their issuance. The bill states the appointment of Forker as trustee, in the place of Fonda, deceased, and that Scribner, trustee,

was made a defendant because he had failed and neglected to join in the bringing of the suit when requested so to do. The bill prayed for an accounting of the amount due for principal and interest on the bonds; that the mortgage be decreed a lien upon the roadbed and franchises of the railway then in the possession of the St. Paul Company; that the mortgage might be foreclosed, and the order of its priority as a lien decreed; that the St. Paul Company might be decreed to have obtained its title to the railroad property and franchises subject to the mortgage; and that the complainants might have the right to foreclose their mortgage as if the decree upon the Cleveland judgment and the sale and deed thereunder had not been made, and as if the Minnesota Company were still an existing corporation; and that the railway and its appurtenances might be sold to pay the amount due, subject to such conditions as the court should see fit to impose upon the complainants' right to relief. The answer, inter alia, sets forth a voluntary surrender by the Minnesota Company prior to the year 1872 of its corporate franchises, which in that year was accepted by the state, and sets forth and pleads section 8, c. 78, of the Revised Statutes of Wisconsin for the year 1858, and that the trustee in the Fonda and Scribner mortgage brought no suit to foreclose the mortgage within three years from and after the surrender and acceptance, and did not, nor did any creditor or stockholder of that company, within three years in any manner apply to any court of Wisconsin or of the United States for the appointment of a receiver under the provisions of that statute, and that by failure so to do the debt evidenced by the bonds and mortgage became extinguished and the lien of the mortgage destroyed. The answer also pleads section 15 of chapter 138 of the Revised Statutes of Wisconsin for the year 1858, requiring civil actions to be commenced upon an instrument under seal, when the cause of action accrued within the state, within 20 years from the time of the accruing of the action, and that by the surrender of its franchises the Minnesota Company became disabled from the performance of the conditions of the bonds and mortgage, and its personal obligation became extinguished, and that upon the dissolution of the company the cause of action accrued by operation of law in the year 1875 and that this bill was not filed within 20 years from that date; and this is pleaded in bar of the maintenance of the suit. The answer also pleads that the bill was not filed within the time prescribed by subdivision 2 of section 15 of chapter 138 of the Revised Statutes of the State of Wisconsin of 1858, now known as subdivision 2 of section 4220 of the Revised Statutes of Wisconsin for the year 1878. The answer also asserts that the first installment of interest under the Scribner mortgage became due January 1, 1865, in the payment of which and of all succeeding installments of interest there was default; that by the terms of the mortgage, in case such default should exist for the space of 30 days, the trustees were authorized to take possession and sell the property conveyed by the mortgage, and to execute deeds to the purchasers; that after default Scribner, the then surviving trustee, exercised that discretion by the bill filed in January, 1868, hereinbefore stated, and that by the exercise at that time of such discretion the whole principal sum secured by the mortgage became due and payable, and that more than 20 years have elapsed since the principal so became due, and that this bill was not filed within 20 years from and after the accrued cause of action; and thereupon pleads, in bar of the maintenance of this suit, subdivision 2 of section 15 of chapter 138 of the Revised Statutes of Wisconsin for the year 1858. The answer further pleads that, by sections 4219 and 4221 of the Revised Statutes of Wisconsin for the year 1878, it was provided that an action which on or before February 28, 1857, was cognizable by the Court of Chancery, should be commenced within 10 years from and after the cause of action accrued; that this is a suit to redeem, cognizable by the Court of Chancery prior to February 28, 1857; that the St. Paul Company went into possession of the railway on March 6, 1867, as a purchaser under the Cleveland judgment, and has since continued in the actual, open, and notorious possession of the property, not recognizing in any way the Fonda and Scribner mortgage, or the debt secured thereby, as a lien upon the railway or the franchises in said mortgage mentioned, or recognizing the trustees, or those holding the bonds, as having any right by virtue thereof; that the cause of action to redeem, if any, arising to the complainants, accrued more than

10 years before the filing of the bill. The answer further asserted the proceedings under the Cleveland judgment, and the possession of the St. Paul Company thereunder; that the trustees and Gunnison and Bright had full knowledge of those proceedings and of the purchase of the railway by the St. Paul Company; and that, except by the filing of the trustees' bill on January 31, 1868, and of the bill in suit, none of them ever disclosed or made claim to the property by virtue of the mortgage; that they knew that the property could not be operated without the expenditure of large sums of money; that they knew of the prior incumbrances, which were equal to, if not in excess of, the actual value of the property, and which prior incumbrances had been paid by the St. Paul Company with the full knowledge of the trustees and of Gunnison and Bright; that the St. Paul Company, immediately following the purchase and possession of the railway, connected the same with its system of railroads, making the same a part thereof, and expended large sums of money in putting the railway into suitable condition for use, and in maintaining, bettering, and improving the property and connections thereunder, and in making it a part of its system of railways, without which the railroad could not have been operated profitably, and has so expended many millions of dollars, of which the trustees and Gunnison and Bright, and each of them, had knowledge; that notwithstanding the interest upon the mortgage matured semiannually since January 1, 1865, neither the trustee, nor Gunnison and Bright, ever disclosed to the St. Paul Company any claim against it, or against the property in its possession based on the bonds, or made any effort to assert any right or claim based upon the bonds or mortgage against the company; that by reason of the lapse of time, being more than 30 years, it has become impossible on account of the age, death, and removal of witnesses, the radical change in the condition of the railroad and property, the destruction and loss of evidence, records, and books of account, to make proof of the earnings of the railroad and property, and the expenditure laid out in its operation, maintenance, betterments, and improvements; that the mortgage was not made to secure any sum of money borrowed or owing by the Minnesota Company; that the bonds were not issued, negotiated, or sold, but were divided up among certain persons, and, among others, Gunnison, Bright, and one Fleming, who were directors of the Minnesota Company, and without any payment or consideration to the Minnesota Company; and that those facts were known by divers persons, and were capable of proof, but that, by reason of the lapse of time since said transactions, and the age, death, and removal of witnesses to the said facts, the loss and destruction of records and documents since that time, it is now difficult, if not impossible, of proof; and they assert that the lapse of time and laches on the part of the trustees and Gunnison and Bright was such that the complainant should have no standing in a court of equity and no right to the relief prayed. The answer further asserts that it entered into possession of the railway on the 6th of March, 1867, under claim of title, exclusive of any other right, founding such claim of title upon a written instrument, namely, the marshal's deed upon the sale under the Cleveland judgment and James decree, as being a conveyance of the premises in question; and that there has been a continual occupation and possession of the premises and property included in such instrument by the St. Paul Company under such claim for 30 years and upwards, prior to this suit, and that the premises and property during that period were, and still are, held adversely to the complainants and all the world; and that such possession and occupation has been open, notorious, exclusive, and adverse, and constitutes, under the statute of the state of Wisconsin, a bar to this suit.

There was evidence strongly relied upon as showing that the bonds under the Fonda and Scribner mortgage had not been issued for value; that Bright and Gunnison were officers and large stockholders in the Minnesota Company, and as such officers had the custody of these bonds for the company, and appropriated them to themselves without consideration, and that the bonds were in fact the property of the Minnesota Company, and that the small number of them claimed to be owned by the other individual complainants were received from Gunnison without consideration, and that the claimed ownership of them was pretentious. The decision of the court being rested upon other

grounds, it is deemed unnecessary to restate the evidence here upon the question of the ownership of the bonds.

At the hearing a decree passed dismissing the bill upon the merits for want of equity, and the cause is brought here for review upon an appeal allowed by the court below.

William F. Vilas and A. L. Sanborn, for appellants.

Burton Hanson and C. H. Van Alstine, for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above), delivered the opinion of the court:

Among the questions of interest presented at the argument were these: Whether the Cleveland judgment was a lien upon the railway and the franchises of the La Crosse Company from the date of its rendition, October 7, 1857; whether the St. Paul Company derived its title solely from the James decree of January 7, 1867; whether the trustees of the Fonda and Scribner mortgage, and the bondholders under the mortgage, are concluded by that decree, which determined that the sale to the St. Paul Company passed the whole of the interest of the La Crosse Company existing at the time of the rendition of the judgment; and whether that decree was other than an equitable execution rendered necessary from failure of statute law to give a complete remedy by sale upon execution. The Fonda and Scribner mortgage was subsequent in date to the Cleveland judgment, and subject to it; but if the trustees or the bondholders in that mortgage were not parties to or in some way concluded by the James decree, and the St. Paul Company derived its title only through that decree, the representatives of, or the parties interested in, the Fonda and Scribner mortgage might not be bound by it. If, on the other hand, the proceeding which culminated in the sale under the James decree may be treated as merely an equitable execution upon the Cleveland judgment, and as a substitute for the execution provided by statute in ordinary cases, and the title of the St. Paul Company is derived from and based upon the Cleveland judgment, then it may be that, as in the case of the sale under a statutory execution, all having a subordinate interest in the property sold might be concluded. It is clear from the evidence that Gunnison and Bright, who by the bill claim to be the owners of 500 of the 541 bonds issued under the Fonda and Scribner mortgage, by leave of the court, upon their own petition, prosecuted the appeal from the James decree to the Supreme Court in the name of the Minnesota Company, and are therefore concluded by the decree. We do not, however, find it essential to consider these questions at large, or to pass judgment upon them, since upon another branch of the case we are constrained to affirm this decree.

It is provided by section 4211 of the Revised Statutes of Wisconsin of the year 1878, as has been the law of that state since the year 1858, that "where the occupant or those under whom he claims entered into the possession of any premises under claim of title, exclusive of any other right, founding such claim upon some written instrument, as being a conveyance of the premises in question, or upon

the judgment of some competent court, and that there has been a continual occupation and possession of the premises included in such instrument or judgment, or of some part of such premises, under such claim, for ten years, the premises so included shall be deemed to have been held adversely." The St. Paul Company acquired possession of the Eastern Division of the railway in March, 1867, under and by virtue of a deed to it from the marshal of the district of Wisconsin, which recited that in pursuance of the James decree, and also by virtue of the statutes in such cases made and provided, the marshal "hath granted, bargained, sold, aliened, released and confirmed, and by these presents doth grant, bargain, sell, alien, release and confirm unto the said party of the second part, its successors and assigns forever: All and singular the railroad formerly known as the La Crosse and Milwaukee Railroad, from Milwaukee to Portage City, its depots, station-houses, and buildings, together with its rolling-stock, franchises and appurtenances, now in the possession of or claimed by the defendant, The Milwaukee and Minnesota Railroad Company, including all the locomotive-engines, cars and rolling-stock, and all the materials, tools, implements and utensils, and other property belonging to said road from Milwaukee to Portage City, subject however to the following liens and encumbrances thereon, to-wit: A mortgage to Francis A. Palmer for $950,000.00, with interest thereon at eight per cent. per annum since May 1st, 1866; two mortgages to the city of Milwaukee for $314,000.00 with interest thereon from the first day of September, 1866; a mortgage to Green C. Bronson and James T. Soutter for $1,000,000.00 with interest at eight per cent. per annum from March 1st, 1866, and a judgment rendered in favor of Selah Chamberlain, in the district court of the United States for the district of Wisconsin, on the second day of October, 1857, for $629,105.22, and a certain lease given to said Chamberlain as security for the amount of said judgment."

The purchaser, the St. Paul Company, entered into this possession in antagonism to the title of the Minnesota Company, claiming title under the Cleveland judgment and the sale thereunder, pursuant to the James decree, subject only to the incumbrances stated in the marshal's deed, which were prior in time to the Cleveland judgment. That company has since continued in exclusive possession, in no way recognizing, but at all times denying, the right of the Fonda and Scribner mortgage. It is insisted for the appellants that the Fonda and Scribner mortgage is stated in the bill in the James suit, and that it was so stated as a specific ground of relief upon which the decree was based, and it is claimed that that decree is the foundation of the title of the St. Paul Company, and that therefore it is now estopped to question the mortgage and the debt. But counsel overlook the fact that the bill was founded upon the Cleveland judgment and prayed a sale subject only to the incumbrances specified in the marshal's deed. It is true that it states the execution by the Minnesota Company of the Scribner and Fonda mortgage, but it expressly charges that that mortgage is junior and subsequent to the Cleveland judgment, and the allegation respecting that mortgage is made only as the basis for the appointment of a receiver, it being

charged that the Minnesota Company, being in possession of the revenues of the road, was diverting them to the payment of the principal and interest of that mortgage, while fraudulently failing to pay interest on the prior incumbrances. We find no element of estoppel as asserted by counsel. The possession of the St. Paul Company during the 30 years prior to the filing of the bill in this cause was actual, open, notorious, exclusive, and adverse. It has treated the property as its own in antagonism to every other interest or claim, except the prior incumbrances specified in the marshal's deed. It has paid those prior incumbrances, amounting to nearly $3,000,000; it has paid the taxes assessed against the property by the state of Wisconsin; it has largely improved the physical condition of the property; so that we have no difficulty in finding as a fact that the St. Paul Company entered into possession of this property and has remained in possession for 30 years, claiming title under the Cleveland judgment and the deed upon the sale under the James decree, and that such possession has been adverse to any claim of the complainants. We had occasion to consider this statute of Wisconsin in the case of the City of La Crosse v. Cameron, 80 Fed. 264, 25 C. C. A. 399, and it has often been spoken to by the Supreme Court of Wisconsin, as well since that decision as by the cases therein referred to. Heinselman v. Hunsicker, 103 Wis. 12, 16, 79 N. W. 23; McCann v. Welch, 106 Wis. 142, 148, 81 N. W. 996; Pitman v. Hill, 117 Wis. 318, 322, 94 N. W. 40; Hatch v. Lusignan, 117 Wis. 428, 432, 94 N. W. 332. The resultant of these decisions is that the statute applies where one has entered under claim of title, founded upon written instruments as being conveyances of the premises, and has held adverse possession for more than 10 years. It is immaterial that the instrument does not convey a good title. It is immaterial that the instrument is invalid. It is immaterial that the claim is made in bad faith. It is the hostile, exclusive possession under the instrument that satisfies the statute. It is said that all that the St. Paul Company derived from the judgment was a conveyance from the Minnesota Company of the property held in fee by it, with an assignment of the Cleveland judgment, which was a prior incumbrance. This we conceive to be an incorrect statement of the situation. The St. Paul Company was not a grantee of the Minnesota Company. The effect of the James decree was to direct a sale of the interest of the La Crosse Company in the land to satisfy the Cleveland judgment, which was prior to any title of the Minnesota Company, the latter company being made a party because it was in possession and claimed adversely to the St. Paul Company, and it was therein decreed that the Cleveland judgment was a lien upon the property and the franchises of the La Crosse road as of the date of the judgment, and directed a sale to satisfy that judgment. The St. Paul Company entered into possession under the marshal's deed, claiming title under, through, and by virtue of the Cleveland judgment and the decree in the James suit, and adversely and not under or in right of the Minnesota Company. The title that was obtained and that was sought to be obtained was not the title of the Minnesota Company, but the title of the La Crosse Company at the date of the judgment. Nor

did the St. Paul Company enter into possession under or in subordi-
nation to the Scribner mortgage. The marshal's deed purported to
make an absolute conveyance of the property, subject only to the
incumbrances therein specified, namely, the mortgages to Palmer,
to the city of Milwaukee, to Bronson and Soutter, and the judgment
in favor of Selah Chamberlain. Its claim of possession under that
deed was hostile to the Scribner mortgage, as is abundantly shown
by this record. We think that the Supreme Court of Wisconsin has
determined that under such circumstances possession is adverse and
that the statute applies. In North v. Hammer, 34 Wis. 425, one
Sampson was the owner of homestead premises, and while so occupy-
ing them a judgment was recovered against him by one Delaney in
a justice's court, which was docketed in the proper court of record
on December 12, 1850. There was a sale by the sheriff under that
judgment to Delaney in November, 1851. The deed following there-
on from the sheriff to Delaney only purported to convey the interest
which Sampson held at the date of filing the transcript of the judg-
ment in the county where the land was situated, stated to be Decem-
ber 12, 1851, but a second or corrected deed correctly stated the date
as December 12, 1850. On August 19, 1851, Sampson conveyed to
North the premises in question as security for a debt, taking back a
defeasance in the form of a bond under seal for a reconveyance, the
grantor remaining in possession. Delaney conveyed to Hammer for
full value, the purchaser taking possession claiming title under the
deed, exclusive of any other right, and occupied the same continuous-
ly for more than 10 years. The bill was filed by North to foreclose
Sampson's supposed equity of redemption. The court ruled that the
suit was barred by the statute, observing, at page 432:

"Various objections are taken to the sale on the execution, and to the title
derived through the sale, and it is claimed that the interest of the judgment
debtor was not divested by it. But we shall not dwell upon these objections
to determine whether they are valid or not, because, in the view we entertain
of the case, the bar is effectual although the defendant Esther may not have
acquired a rightful title under the execution sale. In order to constitute ad-
verse possession under the statute, it is not necessary that the title under
which the party claims should be a good one. It is sufficient that a party
enters into possession under claim of title exclusive of any other right, found-
ing such claim upon some written instrument. It is not essential that the
claim upon which an adverse possession is founded is made upon an instrument
which conveys a valid title. If adverse possession could only be based upon
an instrument which conveyed a good and perfect title, it is apparent that the
statute would be of little value."

The court further observes:

"She [Hammer] took the deed as conveying to her the full title, and entered
into possession claiming the land as her own absolutely, and justifies and main-
tains her possession by virtue of this conveyance. Her possession has been
hostile from the first, not acknowledging any right of the plaintiff or of Samp-
son, or of any other person, in the land; and, if there is any efficacy in the stat-
ute, her title has ripened into a perfect one, whatever defect there might have
been in the execution sale. If she knew of the plaintiff's claim to the land, ei-
ther at the time or after she purchased of Delaney, she denied that this claim
was of any validity, and never acknowledged it in any manner. It is assumed
that she only purchased an equity of redemption, and subject to the plaintiff's
mortgage. But it seems to us that this assumption is opposed to all the facts.

and proofs in the case. For the evidence conclusively shows that she supposed she was getting a perfect title—that the interest of Sampson had been divested by the sheriff's sale; or, at all events, that the conveyance from Delaney to her carried the fee, and not merely the equity of redemption. And since the character of her possession has been hostile and adverse from its inception, under this deed, the statute of limitations has run in her favor, even if there was a defect or irregularity in the sale upon the execution against Sampson."

It is supposed that the case of Maxwell v. Hartmann, 50 Wis. 660, 668, 8 N. W. 103, is opposed. There Maxwell, the holder of a mortgage dated January 9, 1857, made by one Gessner, brought suit to foreclose. The defendants, Hartmann, asserted adverse possession under warranty deed from Gessner, the mortgagor, to them. The court held that the mortgage being duly recorded, and the deed by the mortgagor to Hartmann being long subsequent to such record, it must be presumed to have been taken with full knowledge of the mortgage, and, so taking title, her rights were subject and subordinate to the mortgage, until it is shown by some act that such possession is inconsistent with the rights of the mortgagee. We do not understand that this case in any way impugns the force of North v. Hammer. Of course, one taking a deed from the mortgagor and entering into possession is, as against a prior recorded mortgage, presumed to take in subordination thereto, and, in the absence of acts showing claim of title and possession hostile to such mortgage, holds in subordination thereto. The recent case of Pitman v. Hill, 117 Wis. 318, 94 N. W. 40, fully supports the doctrine of North v. Hammer. The land in dispute in that case was selected and entered in June, 1859, by one Pitman, as the agent of one Stetson and in the latter's name, and a patent issued to Stetson in August, 1860. In August, 1861, Stetson assigned the certificate of entry to Pitman as security for a debt, under an agreement by Pitman to reconvey upon payment, and the note and agreement were found after Stetson's death among his papers. Pitman entered into possession under the assignment of the certificate, exercised acts of ownership by taking wood from the premises, and upon his death the property, or his interest in the property, passed by will to the plaintiff, who continued to use the property substantially as had Pitman, paying the taxes during the time of the exercise of acts of ownership, the land being wild and unoccupied territory during all the time subsequent to the entry, except as it was used as a wood lot. The court held that adverse possession was established, saying:

"The assignment of the certificate of entry, in terms conveying the same and the land therein described to respondent's predecessor, was a sufficient written instrument upon which to found adverse possession under sections 4211, 4212, Rev. St. 1898. Grant that the purpose of the parties was to make a mortgage and not a conveyance of the title, and grant, also, that the mortgage indebtedness had been paid; still there is evidence from which the court was warranted in coming to the conclusion that respondent's predecessor held adverse possession under the instrument for the full statutory period necessary to give him full title to the property. A mere mortgagee of land has no right to the possession thereof. In this case respondent's father, under the written instrument mentioned—let it be a mortgage or full conveyance, it makes no difference which we call it—took possession of the property and treated it as his own for more than 20 years, and his conduct during the whole time was consistent only with the idea that his possession was adverse. Ten

years would have been sufficient. Such conduct by a mortgagee is sufficient to give him title by adverse possession. Knowlton v. Walker, 13 Wis. 264; Waldo v. Rice, 14 Wis. 286. The acts of ownership were open, continuous, hostile, and of a nature to satisfy all the essentials of adverse possession under or independently of the statute. Lampman v. Van Alstyne, 94 Wis. 417, 69 N. W. 171. They consisted of using the premises for a wood lot, the adverse possessor taking the wood therefrom for his ordinary use annually for the full statutory period. That satisfies to the letter subdivision 3, § 4212, Rev. St. 1898. To that we have added the significant circumstance of the payment of the taxes, which is inconsistent with any other theory than that the payor claimed the property as his own. Whether his claim was in good faith or bad faith, of course makes no difference. Lampman v. Van Alstyne, supra. The continued use of the property as indicated, by force of the statutes (sections 4210, 4211), displaced the presumption that it was subordinate to the rights of a superior owner, and substituted in its place the presumption that the use was characterized by all the elements of adverse possession necessary to cut off the title of a once superior owner, if there were such, and vest a complete title in fee in the hostile claimant."

We think that the law of Wisconsin is settled, and that the facts disclosed by the record bring the case before us fully within the purview of the statute. The St. Paul Company entered adversely. It claimed that the title which it had obtained was the title of the La Crosse Company as of the date of the rendition of the Cleveland judgment, and that this interest so acquired was prior in time and superior to any title by the Minnesota Company, or of the trustees under the mortgage in suit executed by the Minnesota Company. That claim was made in good faith. It was fortified by the decree of the Supreme Court so adjudging as between the St. Paul Company and the Minnesota Company. The deed purported to convey an absolute title, subject only to the stated prior incumbrances not here involved. In every way its possession, whether it be referred to the Cleveland judgment, to the James decree, or to the marshal's deed, was hostile and adverse to the Scribner mortgage, and exclusive of any right by virtue of that mortgage. We think the case comes clearly within the statute, and we are bound to follow the statute.

It is said that to hold this statute of limitations to be applicable would deny to the complainants opportunity to contest the right and possession of the St. Paul Company; that, as the trustees of the Fonda and Scribner mortgage were not parties to the James suit, they could not be concluded by the decree in that suit; and that at no time thereafter, within 10 years of the suit, could they or the bondholders have contested the right of the St. Paul Company, because the mortgage debt did not mature until the year 1884, and the provision of section 3186 of the Revised Statutes of 1878, that "any person not having such title or possession, but being the owner and holder of any lien or encumbrance on land, shall also have the same right of action as the owner in fee to contest the legality and validity of any other claim, lien or encumbrance on such land, or any part thereof," was not in force until the year 1878, and until after the expiration of the 10 years' adverse possession. If this were so, and however inequitable it may be, it is difficult to see how the fact could avail to toll the running of the statute. Amy v. Watertown (No. 1), 130 U. S. 301, 9 Sup. Ct. 530, 32 L. Ed. 946. As was there said, we

are bound by statute, and are obliged to obey the state law, even if it lead to an inequitable result. But is it true that the complainants were without remedy? The Minnesota Company had defaulted in the payment of the bonds under the Scribner mortgage on January 1, 1865, prior to possession taken by the St. Paul Company under the marshal's deed, and defaulted in the payment of every semiannual installment after that date. Over $120,000 of interest was due, assuming the bonds to have been issued and sold for value, at the time the St. Paul Company took possession. Just prior to the expiration of the 10 years' adverse possession over $550,000 of interest was due and unpaid, exceeding in amount the principal sum of the bonds now claimed by the complainants to have been outstanding and held by them for value. The trustee had during all that time, by the terms of the mortgage, the right to foreclose and to sell the property; a right equal to his right to foreclose after maturity of the debt, for the mortgage provided that in the case of default for the space of 30 days in the payment of any interest warrant coupon, as it should fall due, the trustee was authorized to take possession of the railroad and the property conveyed, to receive the income and profits, and to sell it with all the rights and franchises of the Minnesota Company, and to execute conveyances thereof. The trustee and the bondholders knew, at the time of the sale under the James decree, that the Minnesota Company was wholly irresponsible, and that recourse could be had for payment of the mortgage debt to no other property than this Eastern Division; yet during that 10 years' adverse possession they rested supinely, making no effort to obtain the possession or to dispute the right and claim of the St. Paul Company. We say they made no effort, because they assert that the Scribner bill, filed in 1868, was filed without authority of the trustee, and they repudiate that proceeding. It is also to be observed that the St. Paul Company was in exclusive and adverse possession for 30 years prior to this suit, and for nearly 13 years after the maturity of the principal of the bonds of the Scribner mortgage and before the filing of this bill. So that, if the enforcement of the statute law of the state with respect to adverse possession should seem to operate harshly upon the complainants, they have only themselves to blame, for, if they had rights as against the St. Paul Company, they had opportunity to contest their right in the courts.

The decree must be affirmed.